BURSOR & FISHER P.A.

1330 AVE. OF THE AMERICAS
Floor 32
NEW YORK, NY 10019
www.bursor.com

YITZCHAK KOPEL
Tel: 646.837.7150
Fax: 212.989.9163
ykopel@bursor.com

April 29, 2026

***Via ECF***
The Honorable Katherine Polk Failla
40 Foley Square, Courtroom 2103
New York, New York 10007

***Re: In re Wunderkind Privacy Litigation, Case No. 1:25-cv-05854-KPF***

Dear Judge Failla:

We, along with Janove PLLC, are Interim Co-Lead Counsel in the above matter. Pursuant to Section 4(A) of Your Honor's Individual Rules, we write to respond to Defendant Wunderkind Corporation's letter requesting a pre-motion conference regarding its anticipated motion to dismiss (ECF No. 48) (the "Ltr."). Courts have routinely sustained claims against data brokers like Defendant concerning identical conduct. *See*, *e.g.*, *Gilligan v. Experian Data Corp.*, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026); *Krzyzek v. OpenX Techs., Inc.*, --- F. Supp. 3d ---, 2026 WL 206855 (N.D. Cal. Jan. 27, 2026); *Semien v. PubMatic Inc.*, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026); *Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075 (N.D. Cal. 2025); *Lewis v. Magnite, Inc.*, 2025 WL 3687546 (C.D. Cal. Dec. 4, 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 929 (N.D. Cal. 2023). This Court should do the same.

## I. PLAINTIFFS HAVE ARTICLE III STANDING

Defendant argues Plaintiffs lack Article III standing because the conduct here ostensibly only concerns "browsing general websites involv[ing] only non-sensitive information." Ltr. at 2. This misrepresents the Consolidated Complaint. Plaintiffs allege Defendant is a data broker that "engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of [] Plaintiff[s'] online web browsing activity tied to their … personal identifiers," including "information regarding users' activity on websites and communications with websites in the form of full-string URLs and button click events." *See Gilligan*, 2026 WL 32259, at *2; *see also*, *e.g.*, CAC ¶¶ 11, 15, 17-18, 26, 113-115, 117-119, 123-138. This information includes "shopping habits, financial status and information, health information, political leanings and interests, and the media they consume." CAC ¶ 263. Defendant then disseminates those profiles to a wide array of other third parties (including other data brokers), primarily as part of the real-time bidding ecosystem, but for sale regardless. *See*, *e.g.*, *id.* ¶¶ 29, 35-38, 50-53, 113, 135, 140, 144-147.

In other words, Defendant compiled the sort of "cradle to grave" profiles on Plaintiffs that courts have found sufficient to confer standing. *Krzyzek*, 2026 WL 206855, at *3; *see also Gilligan*, 2026 WL 32259, at *2 (finding Article III standing where "Plaintiffs allege that Experian compiled detailed profiles by tracking their interactions across many websites"); *D'Antonio v. Cable News Network, Inc.*, --- F. Supp. 3d ---, 2026 WL 960032, at *5 (S.D.N.Y. Apr. 9, 2026) (finding Article III standing based on website's enablement of profile-building, including through use of Defendant's tracking technologies). Defendant's conduct also

"interfere[d] with [Plaintiffs'] ability to remain anonymous." *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1107 (N.D. Cal. 2025). "That privacy injury finds historical analogues in injuries redressable under the common law." *Deivaprakash v. Condé Nast Digital*, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025).

Defendant understands these allegations give rise to Article III standing, as it removed the *Wine* action to federal court—which contained similar allegations to the Consolidated Complaint. *See* ECF No. 33. The removal of *Wine* to federal court is a concession that Article III standing exists. *Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at *7 (S.D.N.Y. June 2, 2020) ("Defendants cannot rely on CAFA to justify the court's continued exercise of jurisdiction over the claims against them while simultaneously arguing that the court must dismiss those same claims for lack of subject matter jurisdiction.").

Defendant also argues Plaintiffs' harm is not "traceable to Wunderkind." Ltr. at 2. Not so. For instance, Plaintiff Weiler's CCPA data shows Defendant tracked her across many websites "over 45,000 times … between May 2020 and February 2025." CAC ¶ 183 (cleaned up). Plaintiff Balogun also alleges Defendant tracked her across numerous websites. *Id.* ¶¶ 193, 195. Plaintiffs' allegations thus go beyond being tracked on a single website and are attributable to Defendant's widespread data collection across numerous websites to create the profiles at issue. *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) ("[P]laintiffs clearly have alleged standing to sue AddShoppers: it orchestrated the scheme and then directly took the injury-causing actions."). And while website operators may also be liable to Plaintiffs and the class members for employing Defendant's technology on their specific websites, Defendant remains liable as well for its role in this scheme. *Id.*, at *1-2 (finding third party software company and websites could both be liable for alleged tracking). Defendant's argument—that because multiple parties may be liable for Plaintiffs' harm, none are—is simply not the law. *See DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 818 (2015) ("Although a breach of contract may constitute a single wrong, the plaintiff has separate breach of contract claims against each of the defendants alleged to be jointly and severally liable."); *Hecht v. City of New York*, 60 N.Y.2d 57, 62 (1983) ("[A] judgment for or against one tort-feasor does not operate as a merger or bar of a claim against other tort-feasors.").

## II. PLAINTIFFS PLAUSIBLY ALLEGE THEIR CLAIMS

***Invasion of Privacy/Intrusion Upon Seclusion.*** California law applies given both Plaintiffs were injured in California where they were tracked by Defendant and had their privacy invaded. CAC ¶¶ 182, 193; *see Selby*, 2025 WL 2950164, at *1 ("Sovrn … installed tracking cookies onto Plaintiffs' browsers while at least some of them were in this district, and proceeded to track them as they navigated through websites in this district.") (cleaned up); *Popa v. Harriet Carter Gifts*, 52 F.4th 121, 131 (3d Cir. 2022) ("NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers. And that was at Popa's browser, not where the signals were received at NaviStone's servers."). For similar reasons as Plaintiffs have Article III standing, they have also plausibly alleged their invasion of privacy claims. Defendant's "tracking of individuals' activity across thousands of websites … to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy." *Riganian*, 791 F. Supp. 3d at 1087; *Krzyzek*, 2026 WL 206855, at *4 (sustaining an intrusion upon seclusion claim where "OpenX allegedly tracks, compiles, and sells massive amounts of information on plaintiffs, without their knowledge that an OpenX pixel has been loaded onto a given website.").

***CIPA § 631.*** Plaintiffs allege the interception of the "contents" of communications, including the "[a]ction category on each website," "[i]nformation related to the specific product being advertised," and the articles being viewed. CAC ¶¶ 90, 92, 184(v)-(vi), 196(v)-(vi); *Gilligan*, 2026 WL 32259, at *3; *Semien*, 2026 WL 216333, at *9. Plaintiffs further allege Defendant used the communications intercepted "in transit" by the Partner Pixels, or otherwise aided said interception by identifying the users behind the communication. CAC ¶¶ 252-253; *Semien*, 2026 WL 216333, at *8-9; *Krzyzek*, 2026 WL 206855, at *5 n.7, *6.

***CIPA § 632.*** Plaintiffs allege the recording of substantive communications for the same reason as CIPA § 631. The communications here were "confidential" because Plaintiffs had "a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by [Defendant's] Tracking Technologies would not be shared with third parties." *Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *18 (S.D. Cal. Mar. 12, 2026). Further, software constitutes a "device" under CIPA § 632 as courts have repeatedly held. *Frasco v. Flo Health, Inc.*, 2025 WL 2680068, at *17 (N.D. Cal. Sept. 17, 2025) (sustaining jury verdict under CIPA § 632 that found "Meta intentionally … recorded plaintiffs' conversation by using an electronic device") (cleaned up); *Libman v. Apple, Inc.*, 2024 WL 4314791, at *13 (N.D. Cal. Sept. 26, 2024) ("[S]oftware is a device under section 632(a).") (collecting cases).[1]

***CIPA § 638.51.*** "Numerous courts have rejected th[e] argument" that this provision of the CIPA "only appl[ies] to telephone surveillance." *DellaSala v. Samba TV, Inc.*, 2026 WL 1138358, at *7 (N.D. Cal. Apr. 21, 2026). Indeed, numerous courts have found Defendant's *exact tracking technology* is a "pen register." *See*, *e.g.*, *D'Antonio*, 2026 WL 960032, at *6-7; *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *1, *5-6 (N.D. Cal. Oct. 9, 2025); *Anderson v. National Collegiate Athletic Association*, 2026 WL 925519, at *3, *8 (C.D. Cal. Mar. 25, 2026).

***ECPA.*** Defendant fails to show Plaintiffs "consented [to Defendant's tracking] via the privacy disclosures on the websites they visited" (Ltr. at 3), as is Defendant's burden. *Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) ("[C]onsent is an affirmative defense for which defendant bears the burden of proof.") (cleaned up). And "[c]ourts have held "the association of Plaintiffs' data with preexisting user profiles"—as Defendant does here—"is a further use of Plaintiffs' data that satisfies th[e] [crime-tort] exception." *Semien*, 2026 WL 216333, at *10; *Riganian*, 791 F. Supp. 3d at 1091; *Gilligan*, 2026 WL 32259, at *3.

***GBL § 349.*** **"**New York courts have held that a privacy injury can be the basis for a § 349 claim 'where confidential, individually identifiable information … is collected without the individual's knowledge or consent.'" *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369, 383–84 (S.D.N.Y. 2024) (quoting *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017)); *see also Doe v. GoodRx Holdings, Inc.*, 2025 WL 2052302, at *13 (N.D. Cal. July 22, 2025). Such is the case here, where Defendant compiled broad swaths of Plaintiffs' information into non-anonymous profiles disseminated to numerous third parties without consent.

---

[1] Defendant's citation to *Moreno v. S.F. Bay Area Rapid Transit Dist.*, 2017 WL 6387764 (N.D. Cal. Dec. 14, 2017) is inapposite. *Moreno* examined the definition of a "device" under CIPA § 637.7, which "contains materially different language than" CIPA § 632. *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 857 (W.D. Wash. 2024).

Respectfully submitted,

Y. Kopel

Yitzchak Kopel

CC: All counsel of record (via ECF)