UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WUNDERKIND PRIVACY LITIGATION | Case No. 1:25-cv-05854-KPF |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

HOLLAND & KNIGHT LLP
787 Seventh Avenue
New York, New York 10019
(212) 513-3200

*Attorneys for Defendant
Wunderkind Corporation*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTUAL BACKGROUND ..................................................................................................... 2

I.     Wunderkind's Products and Services .............................................................................. 2

II.    Plaintiffs' Alleged Injuries and Claims.......................................................................... 3

PROCEDURAL POSTURE ...................................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I.     Plaintiffs Lack Standing to Assert All of Their Claims.................................................. 4

     A.    Plaintiffs Have Not Established an Injury in Fact. ........................................... 4

     B.    Plaintiffs Cannot Trace Their Purported Harms to Wunderkind's Conduct............... 8

II.    Plaintiffs Fail to State Any Claims Upon Which Relief Can Be Granted ......................... 11

     A.    Plaintiffs' Intrusion Upon Seclusion and CIPA Claims are Precluded by Governing New York Law....................................................................... 11

          1.    New York Law Governs Plaintiffs' Common Law Claims............................ 11

          2.    New York Law Does Not Recognize a Private Right of Action for Wiretapping, Eavesdropping, Use of a Pen Register or Any Cause of Action for Intrusion Upon Seclusion................................................................. 12

     B.    Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion Under California Law. ..................................................................................... 13

     C.    Plaintiffs Fail to State a Claim for Violation of CIPA § 631(a). .............................. 15

          1.    Plaintiffs Do Not Plausibly Allege Third Parties Operating "Partner Pixels" Violated CIPA. ....................................................................... 16

              i.    Plaintiffs Do Not Establish Third Parties' "Intentional Wiretapping" Under the First Clause of Section 631(a). ................................ 16

              ii.    Plaintiffs Fail to Allege "Contents" of a Communication Within Scope of the Second Clause of Section 631(a)................................ 17

              iii.    Plaintiffs Do Not Allege Partner Pixel Operators Intercepted Communications While "In Transit" Under the Second Clause of Section 631(a). .......................................................................... 17

     D.    Plaintiffs Fail to State a Claim for Violation of CIPA § 632.................................. 19

     E.    Plaintiffs Fail to State a Claim for Violation of CIPA § 638.51............................ 21

          1.    The Plain Language of Section 638.51 Contemplates Only Telephones, Not Websites or Any Other Device.......................................................... 21

          2.    The Legislative History of Section 638.51 Supports That the Section Only Applies to Telephone Communications, Not Websites. ................................ 23

F.    Plaintiffs Fail to State a Claim for Violating the ECPA............................................24

G.    Plaintiffs Fail to State a Claim for Violation of N.Y.G.B.L. § 349..........................27

CONCLUSION........................................................................................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*4KZ Inc. v. DimashAli Creative Ctr., LLP*,
No. 24-CV-1249-ST, 2025 WL 2696539 (E.D.N.Y. Sept. 22, 2025)......................................11

*Addi v. The International Business Machines, Inc.*
No. 7:23-cv-5203, Dkt. 18 (S.D.N.Y.) .................................................................................. 9

*Adler v. Cmty.com Inc.*,
No. 2:21-cv-02416-SB-JPR, 2021 WL 4805435 (C.D. Cal. Aug. 2, 2021) ...........................18

*Amalfitano v. NBTY Inc.*,
128 A.D.3d 743 (2d Dep't 2015)...........................................................................................28

*Aponte v. Ne. Radiology, P.C.*,
No. 21-cv5883-VB, 2022 WL 1556043 (S.D.N.Y. May 16, 2022)........................................ 6

*In re Apple Data Priv. Litig.*,
No. 5:22-cv-07069-EJD, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026)..............................19, 20

*Balogun v. Wunderkind Corporation*,
No. 1:25-cv-06113-KPF (S.D.N.Y.) ...................................................................................... 3

*Blalock v. EquipmentShare.com Inc.*,
No. 30-2025-01508739, 2026 WL 330067 (Cal. Super. Jan. 27, 2026)..................................24

*Boucher v. Dilorenzo*,
No. 84-cv-7868, 1986 WL 2409 (S.D.N.Y. Feb. 19, 1986) ...................................................13

*Camm v. Reach Fin., LLC*,
No. 25-cv-1921-KFP, 2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) ............................... *passim*

*Campbell v. Facebook Inc.*,
77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................................................................................20

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................................................................................................26

*Castillo v. The International Business Machines, Inc.*,
No. 7:24-cv-8380, Dkt. 15 (S.D.N.Y. Dec. 17, 2024) ........................................................... 9

*Cody v. Boscov's, Inc.*,
658 F. Supp. 3d 779 (C.D. Cal. 2023)....................................................................................16

*Cohen v. Casper Sleep Inc.*,
No. 17-cv-9325-WHP, 2018 WL 3392877 (S.D.N.Y. July 12, 2018)................... 25, 26, 27, 28

*Cooney v. Osgood Mach., Inc.*,
81 N.Y.2d 66 (1993) ...................................................................................................... 11

*Cousin v. Sharp Health*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)............................................................................ 17

*Dellasalla v. Samba TV, Inc.*,
No. 3:25-cv-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026)................................. 18

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)..........................................................................26, 27

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .............................................................................. 15

*Flanagan v. Flanagan*,
27 Cal.4th 766 (Cal. 2002)............................................................................................. 20

*Gabrielli v. Insider, Inc.*,
No. 24-cv-01566-ER, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) .......................................... 7

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) .......................................................................................14, 25

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .............................................................................. 14

*Greenley v. Kochava, Inc.*,
684 F.Supp.3d 1024 (S.D. Cal. 2023).............................................................................. 19

*Gruber v. Yelp Inc.*,
55 Cal. App. 5th 591 (2020) .......................................................................................... 19

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .........................................................................17, 18

*Heiting v. Taro Pharms. USA, Inc.*,
No. 2:23-cv-08002-SPG, 2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ................................. 17

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024)............................................................................. 18

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .................................................................................................. 14

iv

*Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*,
  48 F.4th 1236 (11th Cir. 2022) ................................................................................................5

*Ji v. Naver Corp.*,
  No. 21-cv-5143, 2022 WL 4624898 (N.D. Cal. Sept. 30, 2022) ...............................................7

*Joiner v. NHL Enters., Inc.*,
  No. 23-cv-2083-LAK-BCM, 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025),
  *report and recommendation adopted,* 2025 WL 3126106 (S.D.N.Y. Sept. 29,
  2025)....................................................................................................................................12, 13

*Katz-Lacabe v. Oracle Am., Inc.*,
  668 F. Supp. 3d 928 (N.D. Cal. 2023) ...................................................................................17

*Khamooshi v. Politico LLC*,
  No. 24-cv-07836, 2025 WL 2822879 (N.D. Cal. Oct. 2, 2025)..................................................8

*Khamooshi v. Politico LLC*,
  786 F. Supp. 3d 1174 (N.D. Cal. 2025) ..................................................................................15

*Koch v. Acker, Merrall & Condit Co.*,
  18 N.Y.3d 940 (2012) ...........................................................................................................27

*Kola v. Forster & Garbus LLP*,
  No. 19-cv-10496, 2021 WL 4135153 (S.D.N.Y. Sept. 10, 2021)...............................................5

*Krock v. Lipsay*,
  97 F.3d 640 (2d Cir. 1996)......................................................................................................11

*Landers v. Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2014) ..................................................................................................18

*Liau v. Weee! Inc.*,
  23-cv-1177-PAE, 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) .................................................8

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  672 F.3d 155 (2d Cir. 2012) ...................................................................................................11

*Licea v. Cinmar, LLC*,
  659 F. Supp. 3d 1096 (C.D. Cal. 2023)...................................................................................16

*Maghoney v. Dotdash Meredith, Inc.*,
  No. 24-cv-2394-AJB-BJW, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026)............................8, 14

*Mastel v. Miniclip SA*,
  549 F. Supp. 3d 1129 (E.D. Cal. 2021)...................................................................................18

*In re Meta Pixel Healthcare Litig.*,
    647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................27

*Ndremizara v. Swiss Re Am. Holding Corp.*,
    93 F. Supp. 3d 301 (S.D.N.Y. 2015) ...........................................................................9

*Nguyen v. Macy's, Inc.*,
    No. 5:25-cv-07096, Dkt. 30 (N.D. Cal. Dec. 25, 2025) ...............................................9

*People v. Drennan*,
    84 Cal. App. 4th 1349 (2000) ....................................................................................19

*People v. Lewis*,
    11 Cal.5th 952 (2021) ................................................................................................22

*Popa v. Microsoft Corp.*,
    153 F.4th 784 (9th Cir. 2025) .....................................................................................7

*Poppel v. Estate of Archibald*,
    No. 19-cv-01403-ALC, 2020 WL 2749719 (S.D.N.Y. May 27, 2020) ......................13

*Revitch v. New Moosejaw, LLC*,
    No. 18-cv-06827-VC, 2019 WL 5485330 (N.D. Cal. Dec. 23, 2019) .......................20

*Rodriguez v. Google LLC*,
    No. 20-cv-04688-RS, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ..................20, 25

*Rodriguez v. Ink Am. Intern. Group LLC*,
    No. 25STCV15350, 2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ......................24

*Rodriguez v. It's Just Lunch, Int'l*,
    300 F.R.D. 125 (S.D.N.Y. 2014) ...............................................................................11

*Roe v. St. John's Univ.*,
    91 F.4th 643 (2d Cir. 2024) .........................................................................................2

*Rose v. Variety Media, LLC*,
    No. 25STCV01865 (Cal. Super.) .................................................................................9

*Rothman v. Gregor*,
    220 F. 3d 81 (2d Cir. 2000) .........................................................................................9

*Saedi v. SPD Swiss Precision Diagnostics GmbH*,
    No. 24-cv-6525-WLH, 2025 WL 1141168 (C.D. Cal. Feb. 27, 2025) ......................14

*Schallert v. Orkin LLC*,
    No. 24STCV31244, 2025 WL 4332757 (Cal. Super. Dec. 15, 2025) ......................24

*Schallert v. Palo Alto Networks, Inc.*,
   No. 25STCV17109, 2026 WL 754028 (Cal. Super. March 6, 2026)........................................22

*Scharon v. Paramount Global*,
   No. 25STCV10585, 2025 WL 2996812 (Cal. Super. Oct. 3, 2025) .........................................22

*Schwartz v. HSBC Bank USA, N.A.*,
   No. 14-cv-9525-KPF. 2017 WL 95118 (S.D.N.Y. Jan. 9, 2017) (Failla, J.) ............................5

*Shostack v. Diller*,
   15-cv-2255-GBD-JLC, 2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ........................................28

*Sloan v. Anker Innovations, Ltd.*,
   711 F. Supp. 3d 946 (N.D. Ill. 2024) ......................................................................................25

*Small v. Lorillard Tobacco Co., Inc.*,
   94 N.Y.2d 43 (1999) ................................................................................................................27

*Smidga v. Spirit Airlines, Inc.*,
   No. 2:22-cv-1578, 2024 WL 1485853 (W.D. Pa. Apr. 5, 2024)................................................8

*Smith v. Chase Manhattan Bank, USA, N.A.*,
   293 A.D.2d 598 (2d Dep't 2002)..............................................................................................28

*So v. Hyatt Hotels Corp.*,
   No. 25-cv-10483, 2026 WL 1235036 (N.D. Ill. May 5, 2026) .................................................13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ...................................................................................................................5

*Sputz v. Alltran Fin., LP*,
   No. 21-cv-4663-CS, 2021 WL 5772033 (S.D.N.Y. Dec. 5, 2021) ............................................6

*Tavernetti v. Super. Ct.*,
   22 Cal. 3d 187 (Cal. 1978)........................................................................................................16

*Timothee v. Meta Platforms, Inc., et al.*,
   No. 25-cv-05106, 2026 WL 1130363 (N.D. Cal. Apr. 24, 2026) ..............................................7

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ...........................................................................................................5, 6, 8

*Tsering v. Meta*,
   No. 25-cv-01611-RFL, 2026 WL 1433958 (N.D. Cal. May 21, 2026) .............................21, 22

*United States v. Jiau*,
   734 F.3d 147 (2d Cir. 2013) ..........................................................................................24, 25, 26

*United States v. Tarantino*,
  617 F. App'x. 62 (2d Cir. 2015)........................................................................................26

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F. Supp. 3d 751 (N.D. Cal. 2023) ..............................................................................18

*Valenzuela v. Super Bright LEDs Inc.*,
   No. 23-cv-01148-JAK, 2023 WL 8424472 (C.D. Cal. Nov. 27, 2023)...............................19

*Vogel v. Am. Kiosk Mgmt.*,
  371 F. Supp. 2d 122 (2005) ................................................................................................4

*Weiler v. Delta Dental of California*,
  No. 4:25-cv-02846, Dkt. 1, Ex. A (N.D. Cal. Feb. 18, 2025)...........................................10

*Weiler v. E! Entertainment Television, LLC*,
  No. 25STCV02509, First Amended Complaint (Cal. Super. Ct., May 27,
  2025)..................................................................................................................................10

*Weiler v. Gap, Inc.*,
  No. 26STCV00746, Dkt. 1 (Cal. Super., Jan. 5, 2026)....................................................10

*Weiler v. Ikea North America*,
  No. 2:25-cv-09659, Dkt. 1 (N.D.Cal. Oct 9, 2025)..........................................................10

*Weiler v. Service Quick, Inc.*,
  No. 25STCV10884, Complaint (Cal. Super. Ct., Apr. 11, 2025).......................................10

*Weiler v. Wunderkind Corporation*,
  No. 1:25-cv-05854-KPF (S.D.N.Y.) .....................................................................................3

*Wesch v. Yodlee, Inc.*,
  No. 20-cv-05991-SK, 2021 WL 1399291 (N.D. Cal. Feb. 16, 2021)..................................17

*Wine, et al. v. Wunderkind Corporation*,
  No. 25CV145737 (Cal. Super.) ...........................................................................................4

*Xu v. Reuters News & Media Inc.*,
  No. 24-cv-2466-PAE, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025).....................................7

*Yockey v. Salesforce, Inc.*,
  688 F. Supp. 3d 962 (N.D. Cal. 2023) ..............................................................................20

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ...........................................................................................27

**Statutes**

18 U.S.C. § 2510(4)................................................................................................................27

18 U.S.C. § 2511(2)(d) ........................................................................................................25

Cal. Penal Code § 631(a) ............................................................................................ *passim*

Cal. Penal Code § 632 ...................................................................................... 12, 19, 20

Cal. Penal Code § 638.50(b)-(c) ........................................................................................21

Cal. Penal Code § 638.51 ...................................................................... 21, 22, 23, 24

Cal. Penal Code § 638.51(a) ............................................................................. 10, 12, 21

Cal. Penal Code § 638.52 ...................................................................................21, 23

Cal. Penal Code § 638.53 ...................................................................................................21

N.Y. Crim. Proc. Law § 705.00 .......................................................................................13

N.Y. Gen. Bus. Law § 349 ...............................................................................................27

N.Y. Penal Law § 250.00 ..................................................................................................13

N.Y. Penal Law § 250.05 ..................................................................................................13

**Other Authorities**

Restatement (Second) of Torts § 652A (1977) ....................................................................6

Restatement (Second) of Torts § 652D ...............................................................................6

Fed. R. Civ. P. 12(b)(1) ................................................................................................1, 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................1, 4

Defendant Wunderkind Corporation ("Wunderkind") submits this memorandum of law in support of its Motion to Dismiss Plaintiffs' Consolidated Amended Class Action Complaint under Rules 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The operative Complaint attempts to vilify innocuous website technologies that help businesses optimize advertising. Plaintiffs chose to visit websites such as E! Online, Macy's, Fashion Nova, Vogue, Shutterfly, Hertz, HelloFresh, Belk, and Vista Print; set their privacy preferences including what data could be shared with third parties such as Wunderkind; then brought claims against both Wunderkind *and* the websites themselves—in separate actions around the country—seeking multiple recoveries for the same purported injuries.

Each of Plaintiffs' claims fails for multiple independent reasons. First, Plaintiffs lack Article III standing as to all of their claims because they do not allege an injury-in-fact traceable to Wunderkind. Second, New York's choice of law rules preclude Plaintiffs' California-law claims, which have no substantive corollary under New York law. Third, Plaintiffs have failed to state a claim as to each and every one of the asserted causes of action.

At bottom, Plaintiffs' claims all fail because they center around the collection and use of inherently non-sensitive data which, as a matter of prevailing law, do not give rise to the privacy claims asserted in this action. Without disclosure of any sensitive data, Plaintiffs cannot establish any of their claims. Since Plaintiffs have already been granted leave to amend their pleading and the deficiencies in their pleadings are not curable, the Court should dismiss the Complaint with prejudice.

## FACTUAL BACKGROUND[1]

### I.     Wunderkind's Products and Services

Wunderkind is a technology company[2] with its principal place of business in New York. Compl. ¶ 7. Plaintiffs allege that Wunderkind places tracking software on its customers' websites to collect personal information from those websites' visitors. *Id*. ¶ 41. According to the Complaint, the data collected by Wunderkind's tools, including mouse movements, page views, scroll patterns, and purchase activity, is combined with other collected metadata and identifiers such as IP addresses, hashed (*i.e.* anonymized) email addresses, and/or phone numbers to make up "comprehensive user profiles." *Id*. ¶¶ 54–124; 140.

The Complaint is scant on details as to how the data purportedly collected by Wunderkind is supposedly shared without Plaintiffs' authorization in violation of various state and federal laws. Instead, the Complaint expends substantial energy discussing ad tech, generally, and how *other* software providers and ad tech companies targeted Plaintiffs. *See, e.g.*, Compl. ¶¶ 14–53 (describing companies "*like* Defendant") (emphasis added); ¶¶ 154–181 (describing practices of analytics companies Pubmatic, Criteo and Magnite). At most, the Complaint alleges that Wunderkind's tools "sync" with certain ad tech intermediaries to share "IP addresses and other device information" for marketing purposes. *See id*. at ¶¶ 26, 132, 145, 150, 162.

---

[1] This factual recitation assumes the truth of the Complaint's allegations for purposes of this motion only. *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) ("Although all factual allegations contained in the complaint are assumed to be true, this rule does not extend to legal conclusions.") (citation and internal quotations omitted).

[2] The Complaint characterizes Wunderkind as a "data broker". Wunderkind is registered as a data broker in California but denies that the definition of "data broker" as used in the Complaint applies to Wunderkind.

## II.    Plaintiffs' Alleged Injuries and Claims

There are similarly scarce allegations concerning the two named Plaintiffs' interaction with Wunderkind's tools or how such interactions led to their purported injuries—in an 83-page Complaint, allegations concerning the two named Plaintiffs take up less than six pages. *See id*. ¶¶ 182–206.

The barebones allegations about Plaintiffs Weiler and Balogun claim that Wunderkind's trackers collected the following information about them from websites[3]: hashed email address, IP address, device information, date and time of visit, action category, and information related to the specific product being advertised. *Id*. ¶¶ 182–196. Plaintiffs allege they were subsequently "served advertisements" based on information collected about their website activity.  *Id*. ¶¶ 189, 200. The Complaint does not identify any sensitive personal information allegedly captured, nor does it make any connection between Wunderkind's purported collection of Plaintiffs' information and the advertising they were shown. *See id*. ¶ 204. Nevertheless, Plaintiffs claim that Wunderkind invaded their privacy, including by "install[ing] or us[ing] trackers on [their] browser[s]" and "aiding in the wiretapping of [their] communications". *Id*. ¶¶ 190–192, 206.

### PROCEDURAL POSTURE

On July 16, 2025, Plaintiff Erin Weiler filed a class action complaint against Wunderkind before this Court. *See Weiler v. Wunderkind Corporation*, No. 1:25-cv-05854-KPF (S.D.N.Y.). On July 25, 2025, Plaintiff Tosin Balogun filed her class action complaint against Wunderkind, which was also presented to this Court. *See Balogun v. Wunderkind Corporation*, No. 1:25-cv-06113-KPF (S.D.N.Y.).

---

[3]Weiler alleges she visited the E! Online website, while Balogun alleges she visited the websites of Macy's, Fashion Nova, Vogue, Shutterfly, Hertz, HelloFresh, Belk and Vista Print. Compl. ¶¶ 182, 193.

Months later, on September 29, 2025, Plaintiffs Daniel Wine, Allison Blank, Sandra Sion, and Kevin Smith filed a complaint against Wunderkind in the California Superior Court for the County of Alameda. *See Wine, et al. v. Wunderkind Corporation*, No. 25CV145737 (Cal. Super.). Following timely removal and on Wunderkind's motion, the Northern District of California transferred the *Wine* action to this Court on March 6, 2026.

On January 21, 2026, this Court consolidated *Weiler* and *Balogun* into *In re Wunderkind Privacy Litigation*, and appointed Plaintiff Weiler and Balogun's respective counsel as co-interim class counsel. In consideration of the then-pending motion to transfer the *Wine* action, the Court set a deadline for Plaintiffs to file a consolidated complaint. Plaintiffs Weiler and Balogun filed their Consolidated Amended Class Action Complaint on March 27, 2026. The Complaint does not include any named plaintiffs or claims specific to the *Wine* action.[4]

## ARGUMENT[5]

### I.    Plaintiffs Lack Standing to Assert All of Their Claims.

The Complaint must be dismissed pursuant to Rule 12(b)(1) for lack of Article III standing. First, Plaintiffs fail to plead that the purported use and/or disclosure of their website activity has caused them any "concrete" harm sufficient to demonstrate an injury in fact. Second, Plaintiffs cannot fairly trace any of their purported harms to Wunderkind.

#### A.  Plaintiffs Have Not Established an Injury in Fact.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not

---

[4] Despite representations to the Court that Plaintiffs would coordinate to include the *Wine* plaintiffs, the *Wine* plaintiffs are conspicuously absent from the operative Complaint. Wunderkind interprets this as a dismissal without prejudice of those plaintiffs and their claims. *See Vogel v. Am. Kiosk Mgmt.*, 371 F. Supp. 2d 122, 129 (2005) (noting amendment of the complaint is the proper mechanism for a party "wishing to eliminate some but not all claims or issues from the action").

[5] For the sake of brevity, Wunderkind omits a recitation of the well-established legal standards on motions to dismiss pursuant to Rules 12(b)(1) and 12(b)(6).

conjectural or hypothetical.'" *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016) (citation omitted). Concrete harms must be "physical, monetary, or cognizable intangible harm[s] traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021). The Supreme Court has rejected the proposition that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a private right of action. *Id.* at 2205. "[A] bare procedural violation, divorced from any concrete harm is insufficient; even in the context of a statutory violation, a concrete injury is necessary". *Schwartz v. HSBC Bank USA, N.A.*, 2017 WL 95118, at *5 (S.D.N.Y. Jan. 9, 2017) (Failla, J.) (no Article III standing in TILA action where "bare assertions of injury [were] conclusory and inadequately pled") (citation and internal quotations omitted). When considering whether an intangible harm passes muster, the Court must find no injury in fact "where a key element of the analogous common-law or historical harm is missing". *Kola v. Forster & Garbus LLP*, 2021 WL 4135153, at *6 (S.D.N.Y. Sept. 10, 2021). "A theory that 'circumvents a fundamental requirement' of an analogous common-law tort 'does not bear a sufficiently close relationship' to establish standing." *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.,* 48 F.4th 1236, 1244 (11th Cir. 2022) (quoting *TransUnion*, 141 S. Ct. at 2210 n.6).

Plaintiffs here cannot establish they suffered any concrete harm. Although they generically assert a "loss of control" over their information, unauthorized collection and use of that information, and the invasion of their "right to be free from covert surveillance and profiling in routine online activity" (Compl. ¶ 308), they fail to allege any physical, monetary, or cognizable intangible harm traditionally recognized as providing a basis for a lawsuit in

American courts. *See TransUnion,* 594 U.S. at 427. Plaintiffs do not establish a privacy-related harm under any privacy tort traditionally recognized in American courts.[6]

The touchstone of traditional privacy torts is a disclosure or an intrusion that is "highly offensive to a reasonable person." *Sputz v. Alltran Fin., LP*, 2021 WL 5772033, at *3 (S.D.N.Y. Dec. 5, 2021); *Aponte v. Ne. Radiology, P.C.*, 2022 WL 1556043, at *5 (S.D.N.Y. May 16, 2022); *see also* Restatement (Second) of Torts § 652D cmt. b. Here, Plaintiffs do not (and cannot) establish how any purported collection or disclosure of information about their alleged internet activity could be highly offensive to a reasonable person. There is nothing inherently "highly offensive" about a third-party learning that an individual "visited the E!Online website" (Compl. ¶ 149) or any of the other websites listed throughout the Complaint, nor is there anything "highly offensive" about having one's anonymized email address, IP address, or device information collected or shared. Compl. ¶¶ 183–185.

Just this year, in another website tracking case, this Court held that disclosure of substantially similar information was not "highly offensive" conduct, noting that courts have held even "disclosure of what could be considered extremely personalized and private information—including social security numbers and geolocation information—did not amount to highly offensive conduct in the commercial context." *Camm v. Reach Fin., LLC*, 2026 WL 861670, at *10 (S.D.N.Y. Mar. 30, 2026) (Failla, J.) (citations omitted). In dismissing plaintiff's intrusion upon seclusion claim for lack of standing, this Court in *Camm* determined "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Id*. (quoting *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022)).

---

[6] There are four generally recognized privacy torts: (1) public disclosure of private facts, (2) intrusion upon seclusion, (3) appropriation of a person's name or likeness, and (4) false light publicity. *See* Restatement (Second) of Torts § 652A (1977).

6

Other courts within the Southern District of New York have likewise declined—on two separate occasions—to find Article III standing in internet wiretapping cases brought by Plaintiffs' counsel here, finding plaintiffs could not establish injury in fact from defendants' use of third-party advertising cookies. In *Gabrielli v. Insider, Inc.*, 2025 WL 522515, at *3 (S.D.N.Y. Feb. 18, 2025), the court rejected plaintiff's argument that defendant invaded his privacy when it "installed the Tracker on his browser and sent his IP address to [a third party] without his consent . . . [in order] to profit from targeted advertising and marketing strategies," finding such allegations failed to resemble historically recognized privacy harms. Similarly, in *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025), the court considered allegations that defendant's web trackers captured plaintiff's IP address, concluding "collection and/or disclosure of this information to third parties does not give rise to a type of injury recognized at common law (or, for that matter, by contemporary legal authority)." *See also id*. at *5 (rejecting argument that defendant deprived plaintiff of "the right to control [his] information").

Other courts across the country have similarly found allegations that third-party website advertising tools invade individual privacy insufficient to establish an Article III injury. *See, e.g., Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (disclosure of plaintiff's pet store website activity was not "any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law."); *Timothee v. Meta Platforms, Inc., et al.*, 2026 WL 1130363, at *4-5 (N.D. Cal. Apr. 24, 2026) (allegations that plaintiffs were "repeatedly targeted with ads directed at their financial hardships" insufficient to plead injury-in-fact); *Ji v. Naver Corp.*, 2022 WL 4624898, at *7 (N.D. Cal. Sept. 30, 2022) (collection of "user and device identifiers" could not give rise to "a privacy injury"); *Smidga v. Spirit Airlines, Inc.*,

7

2024 WL 1485853, at *4 (W.D. Pa. Apr. 5, 2024) ("the collection of basic contact information by [] software or where the plaintiffs merely visited the website are not [] concrete harms."); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at *2 (N.D. Cal. Oct. 2, 2025) (no Article III standing where disclosure of "IP addresses, browser and device data, and 'other identifying information' . . . did not implicate a protectable privacy interest"); *Maghoney v. Dotdash Meredith, Inc.,* 2026 WL 497402, at *5-7 (S.D. Cal. Feb. 23, 2026) (finding "no legally protected privacy interest" in IP addresses, health-related search queries, or "deprived control over the dissemination of [] private online activities."); *see also Liau v. Weee! Inc.*, 2024 WL 729259, at *5 (S.D.N.Y. Feb. 22, 2024) (data leak of "relatively quotidian private information" such as "customers' names, email addresses, and phone numbers, but not payment data or passwords" did not give rise to a concrete harm).

Because there is no "close historical or common-law analogue" to Plaintiffs' alleged harm, Plaintiffs have failed to establish an injury under Article III.

### B.  Plaintiffs Cannot Trace Their Purported Harms to Wunderkind's Conduct.

To establish standing, Plaintiffs must also establish "that the injury was likely caused by the defendant[.]" *TransUnion*, 594 U.S. at 423 (citing *Lujan*, 504 U.S.at 560–61). Even assuming Plaintiffs sufficiently plead an injury in fact (they do not), Plaintiffs also fail to plead that their harm is traceable to Wunderkind. There is nothing more than Plaintiffs' conclusory say-so that Wunderkind caused various unspecified advertisements to be presented to Plaintiffs—no allegations as to which advertisements Plaintiffs saw, or which websites these advertisements were presented on, and certainly no attempt to link those advertisements to Wunderkind. Plaintiffs' generalized averments about their purported harms can no more be connected to Wunderkind than any other website operator, internet service provider, analytics company, ad

8

tech company and/or data broker, all of whom necessarily utilize consumer web data and any of whom could have caused various advertisements to be presented to Plaintiffs.

Under Plaintiffs' allegations, every one of these entities would be equally as responsible for the type of use and disclosure of Plaintiffs' data over which they claim "loss of control." The fact that Plaintiffs' counsel, Bursor & Fisher, P.A., has filed dozens of nearly identical lawsuits against a wide range of commercial actors in courts across the country, emphasizes this point. In each case, a different defendant is accused of causing the same and overlapping purported harms as in this action (including invasion of privacy and loss of control over personal information)—a logical impossibility. Specifically, Plaintiffs' counsel has filed wiretap lawsuits directly against numerous website operators, and currently has at least four separate wiretap lawsuits pending against the operators of the *same* websites identified in the Complaint here. *See Nguyen v. Macy's, Inc.*, No. 5:25-cv-07096, Dkt. 30 (N.D. Cal.) (macys.com); *Rose v. Variety Media, LLC*, No. 25STCV01865, Complaint (Cal. Super.) (variety.com); *Castillo v. The International Business Machines, Inc.*, No. 7:24-cv-8380, Dkt. 15 (S.D.N.Y.) (weather.com); *Addi v. The International Business Machines, Inc.* No. 7:23-cv-5203, Dkt. 18 (S.D.N.Y.) (weather.com), attached hereto as **Exhibits A**, **B**, **C and D**, respectively, to the Declaration of Sophie L. Kletzien ("Kletzien Declaration") dated May 28, 2026.[7] Did these website operators cause Plaintiffs' purported loss of privacy and control over data, or did Wunderkind? Each complaint's varying allegations underscores a critical break in any causal chain.

Eviscerating traceability even further, Plaintiff Weiler is a named plaintiff in multiple privacy class actions alleging that multiple disparate actors are responsible for the same

---

[7] The Court may properly consider case pleadings and other documents of public record in deciding a motion to dismiss. *See Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 314 n.7 (S.D.N.Y. 2015) ("The Court may take judicial notice of pleadings filed in other cases in deciding a motion to dismiss"); *Rothman v. Gregor*, 220 F. 3d 81, 92 (2d Cir. 2000) (taking judicial notice of a complaint filed in another action as a public record).

purported harm as here. *See, e.g., Weiler v. E! Entertainment Television, LLC*, No. 25STCV02509, First Amended Complaint (Cal. Super.); *Weiler v. Delta Dental of California*, No. 4:25-cv-02846, Dkt. 1, Ex. A (N.D. Cal.); *Weiler v. Gap, Inc.*, No. 26STCV00746, Dkt. 1 (Cal. Super.); *Weiler v. Ikea North America*, No. 2:25-cv-09659, Dkt. 1, (N.D.Cal.); *Weiler v. Service Quick, Inc.*, No. 25STCV10884, Complaint (Cal. Super.), attached hereto as **Exhibits E**, **F**, **G, H and I**, respectively, to the Kletzien Declaration. In each of these other class actions, Weiler asserts overlapping claims arising out of the same facts and causal chain as here—that the named defendant collected the same personal information from the same sources as Wunderkind, and used that same data to present the same advertisements to Weiler as Wunderkind.[8] Notably, Weiler is the sole named plaintiff in *Weiler v. E! Entertainment Television, LLC*—a class action brought by her counsel in this case, directly against the same E! Online website at issue in this case, asserting identical privacy theories based on the same conduct. Weiler and Balogun no doubt are subsumed within the scope of the proposed class definitions of hundreds of other class actions pending directly against website owners and other ad tech companies. Plaintiffs cannot plausibly claim the same "harm" from multiple defendants in different lawsuits while also demonstrating such harm is traceable only to Wunderkind—particularly where, as here, Plaintiffs fail to allege any facts establishing the causal connection between Wunderkind's tools and Plaintiffs being presented with any particular advertisement. Moreover, permitting Plaintiffs to proceed here would impermissibly allow both Plaintiffs and their counsel to seek multiple recoveries for the same purported injury, and would encourage judge-shopping. *See, e.g., 4KZ*

---

[8] *See,* Exhibit E (*E! Entertainment Television, LLC* Complaint) at ¶¶ 202-213 (asserting claim under CIPA § 638.51(a) for use of third-party advertising tools on website and alleging harm from being served targeted advertisements; Exhibit H (*Ikea North America* Complaint) at ¶¶ 64-74 (same); Exhibit F (*Delta Dental of California* Complaint) at ¶¶ 191-201, 217-235 (asserting claims under CIPA § 631(a) and ECPA).

*Inc. v. DimashAli Creative Ctr., LLP*, 2025 WL 2696539, at \*9 (E.D.N.Y. Sept. 22, 2025) ("Plaintiffs are not entitled to double recovery as both claims seek to redress the same harm.").

## II.    Plaintiffs Fail to State Any Claims Upon Which Relief Can Be Granted

### A.  Plaintiffs' Intrusion Upon Seclusion and CIPA Claims are Precluded by Governing New York Law.

#### 1.   New York Law Governs Plaintiffs' Common Law Claims.

New York's choice of law rules mandates the application of New York substantive law to Plaintiffs' state-law claims because the alleged wrongful conduct, premised on an invasion of privacy, occurred in New York. *See* Compl. ¶¶ 231, 302 ("Wunderkind's conduct occurred in New York"). First, federal courts adjudicating pendent state-law claims apply the choice-of-law rules of the forum state—here, New York. *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 135 (S.D.N.Y. 2014). New York applies an "interest analysis" test that assesses which state has the greatest interest in the litigation, and where there is an actual conflict between the laws of different states, New York law looks to the place of the wrongful conduct—not the place where plaintiff was allegedly injured—for conduct-regulating laws. *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996) (applying place-of-conduct rule to conduct-regulating tort under New York interest analysis). Privacy torts, including intrusion upon seclusion, are quintessentially conduct-regulating because they are designed to deter and punish wrongful conduct. *See Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993) (rules that "regulate conduct" are governed by "the law of the jurisdiction where the tort occurred"); *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (same).

Here, the place where the allegedly tortious conduct occurred is New York. Wunderkind is headquartered at 1 World Trade Center in New York City, and Wunderkind's principal place of business is in New York. Compl. ¶ 7. Its key executives and "most" of its employees are

11

located in New York, and the alleged unlawful acts "emanate from" Wunderkind's New York-based operations. *Id.* at ¶ 302 (alleging NY operations). Indeed, Plaintiffs plead Count I and Count VI expressly "pursuant to New York law." Compl. ¶¶ 231, 349. The conduct Plaintiffs challenge in all of their claims—the design, configuration, and deployment of Wunderkind's technology, Wunderkind's data collection, and decisions about whether and how to share that data with advertising partners—was undertaken, if at all by Wunderkind, from or through its New York-based headquarters and operations.

Just last year, in materially identical circumstances, Magistrate Judge Moses applied New York choice-of-law rules and held that New York law governed plaintiffs' intrusion-upon-seclusion and Pennsylvania state wiretap claim because the challenged conduct—the placement and implementation of a tracking pixel—was alleged to have emanated from defendants' New York operations. *See Joiner v. NHL Enters., Inc.*, 2025 WL 2846431, at *9 (S.D.N.Y. Aug. 29, 2025)*, report and recommendation adopted,* 2025 WL 3126106 (S.D.N.Y. Sept. 29, 2025). The same should result here.

### 2. New York Law Does Not Recognize a Private Right of Action for Wiretapping, Eavesdropping, Use of a Pen Register or Any Cause of Action for Intrusion Upon Seclusion.

Neither Plaintiffs' CIPA claims nor their claim for intrusion upon seclusion are recognized under New York law. First, CIPA §§ 631(a), 632 and 638.51(a) are clearly inapplicable given that New York, not California law, controls Plaintiffs' state claims. *See, e.g.*, *Joiner*, 2025 WL 2846431, at *12 ("Because New York law applies to both of plaintiffs' state law claims, and because New York does not recognize the tort of intrusion upon seclusion or permit private civil suits for wiretapping, both of those claims should be dismissed."); *So v. Hyatt Hotels Corp.*, 2026 WL 1235036, at *5 (N.D. Ill. May 5, 2026) (dismissing CIPA claim because "the legality of Hyatt's disclosures is governed by Illinois law, not California law.").

12

Plaintiffs have not—and cannot—advance a claim for violation of New York's wiretapping, eavesdropping, or pen register statutes. New York is a one-party consent state, and there is no private right of action for an alleged illegal wiretap, eavesdropping, or use of a pen register under New York law. *See* N.Y. Penal Law §§ 250.00, 250.05; N.Y. Crim. Proc. Law § 705.00; *Boucher v. Dilorenzo*, 1986 WL 2409, at *4 (S.D.N.Y. Feb. 19, 1986).

Second, "New York has consistently refused to recognize a common law right of privacy, and hence there is no cause of action of intrusion upon seclusion under New York law." *Poppel v. Estate of Archibald*, 2020 WL 2749719, at *9 (S.D.N.Y. May 27, 2020); *see Joiner*, 2025 WL 2846431, at *12 (dismissing claim where New York does not recognize intrusion upon seclusion). On these grounds alone, Plaintiffs' California law claims should be dismissed.

### B. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion Under California Law.

Even if the Court were to conclude that California law governs Count I—which it should not—Plaintiffs still fail to plead intrusion upon seclusion. To state such a claim under California law, a plaintiff must allege that defendant "intentionally intruded into a place, conversation, or matter as to which plaintiff has a reasonable expectation of privacy," and that the alleged intrusion was "highly offensive to a reasonable person" and sufficiently serious and unwarranted to constitute an "egregious breach of the social norms." *Camm*, 2026 WL 861670, at *10 (quoting *Saedi v. SPD Swiss Precision Diagnostics GmbH*, 2025 WL 1141168, at *6 (C.D. Cal. Feb. 27, 2025)). Plaintiffs plead neither element.

First, Plaintiffs do not plausibly allege an actionable "intrusion" by Wunderkind. Under California law, "the intrusion itself" is the actionable conduct, and "one cannot logically intrude into communications to which [it is] a party" or for which it is the intended recipient. *Id.* (quoting *Saedi*, 2025 WL 1141168, at *6). Voluntarily providing data to websites by visiting

them does not establish the requisite intrusion. *Saedi*, 2025 WL 1141168, at *8. *See also Maghoney*, 2026 WL 497402, at *5 (plaintiffs "voluntarily turn[ed] over [their information] to third parties" when visited a website and "their devices automatically sen[t] their IP addresses to the website's server").

While Plaintiffs assert in conclusory fashion that Wunderkind was not an intended recipient of their information, that assertion runs contrary to allegations that Plaintiffs voluntarily visited Partner Websites, and those Partner Websites intended for Wunderkind to be a recipient of Plaintiffs' information. Compl. ¶¶ 51–52, 142–45, 148–51, 276–77. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142–145 (3d Cir. 2015) (internet advertisers "were parties to any communications that they acquired" because they "were the intended recipients of the GET requests" sent from plaintiffs' browsers); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832 (N.D. Cal. 2021) (advertising service provider "is an extension of [the website operator]" and therefore "not a third-party eavesdropper"); *Camm*, 2026 WL 861670, at *10 (dismissing intrusion claim where defendant was the intended recipient of the challenged communications).

Second, Plaintiffs do not plausibly allege "highly offensive" conduct. To be "highly offensive," the alleged conduct must exceed "the customs of the time and place" and amount to an "egregious breach of social norms." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). Routine commercial data collection and advertising practices do not meet that standard. *Camm*, 2026 WL 861670, at *10 ("data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy" (quoting *Hammerling*, 615 F. Supp. 3d at 1090). Courts are "hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications." *Esparza*

14

*v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024) (collecting unspecified "personal details," browsing history, and IP address not highly offensive); *Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1179–83 (N.D. Cal. 2025) ("there is no legally protected privacy interest in IP addresses"; and allegations of collecting browser data, device data, IP addresses, and "other identifying information" were "too vague to assert a protectable privacy interest").

Anonymized emails, IP addresses, device metadata, timestamps, action categories, and product-advertising information is the same routine commercial data which *Esparza* and *Khamooshi* held insufficient to be "highly offensive". Compl. ¶¶ 182–96, 200, 204. As this Court explained in *Camm*, considering and rejecting the viability of an intrusion upon seclusion claim under California law, even the disclosure of loan-application outcome information is not highly offensive. *Camm*, 2026 WL 861670, at *10–11 (analyzing cases rejecting intrusion claims involving employment information, bank-account information, credit-card eligibility information, social-security numbers, and geolocation information in commercial contexts) (citations omitted).

### C. Plaintiffs Fail to State a Claim for Violation of CIPA § 631(a).

Assuming, *arguendo*, that California law applies, Plaintiffs still fail to plead a claim under any section of CIPA. Section 631(a) of CIPA contains three operative clauses covering "three distinct and mutually independent patterns of conduct": (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," and (3) "attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (Cal. 1978). Section 631(a) further contains a fourth basis for liability, for aiding and abetting conduct amounting to the other three bases for liability. Cal. Penal Code § 631(a). While not artfully pled, Plaintiffs'

15

CIPA claim appears to be premised on the fourth clause for "aiding and abetting" liability.[9] But Plaintiffs fail to plausibly allege an underlying violation by the third parties operating the "Partner Pixels" at issue. Specifically, Plaintiffs do not allege the information intercepted constitutes "contents" of a communication within the scope of the statute, and Plaintiffs cannot demonstrate their communications were intercepted by third parties while "in transit."

### 1. Plaintiffs Do Not Plausibly Allege Third Parties Operating "Partner Pixels" Violated CIPA.

Plaintiffs assert in conclusory fashion that Wunderkind, "by synchronizing with the Partner Pixels, aided and agreed with the Partner Pixels' wiretapping" of Plaintiffs' communications with various websites. Compl. ¶¶ 251–253. To assert a violation of CIPA based on derivative liability, Plaintiffs must allege *facts* establishing a third party's predicate violation of clause (i), (ii), or (iii) of Section 631(a). *Cody v. Boscov's, Inc.*, 658 F. Supp. 3d 779, 782 (C.D. Cal. 2023). It is unclear here exactly which clause of Section 631(a) Plaintiffs allege third parties violated, but their allegations cannot state a claim under any section of the statute.

### i. Plaintiffs Do Not Establish Third Parties' "Intentional Wiretapping" Under the First Clause of Section 631(a).

The first clause of Section 631(a) prohibits intentionally tapping or making any unauthorized connection "with any telegraph or telephone wire, line, cable, or instrument[.]" Cal. Penal Code § 631(a). "Courts have consistently interpreted this clause as applying only to communications over telephones and not through the internet." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1104 (C.D. Cal. 2023). Because Plaintiffs here allege the communications at issue took place over the internet (Compl. ¶¶ 182–206), they cannot plausibly premise their aiding and abetting claim against Wunderkind on third parties' alleged violation of the first

---

[9] To the extent Plaintiffs assert a different theory of liability under Section 631(a) in opposing this motion, Wunderkind reserves rights to address such theory in its reply.

clause of Section 631(a). *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at \*2 (C.D. Cal. Dec. 26, 2023) (collecting cases).

        ii.      Plaintiffs Fail to Allege "Contents" of a Communication Within Scope of the Second Clause of Section 631(a).

Plaintiffs also have not alleged actionable "contents" of a communication within the scope of the statute. "Contents" refers to the "intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023) (citation omitted).

Cookies, IP addresses, email addresses, URLs, and advertising identifiers (*see* Compl. ¶¶ 54–104) are not "contents" within the meaning of the statute. *See Cousin v. Sharp Health*, 681 F. Supp. 3d 1117, 1122-1130 (S.D. Cal. 2023) (finding users' unique identifiers, search parameters, and location filters collected by website cookies were not "contents" under CIPA); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1093 (N.D. Cal. 2022) ("information about personal habits and identities that Google 'infers' from the types of apps a user uses is not 'content' [under CIPA]"). *Contrast Camm*, 2026 WL 861670, at \*8 (finding plaintiffs had satisfactorily alleged "contents" by asserting that sensitive loan application determinations were communicated); *Wesch v. Yodlee, Inc.*, 2021 WL 1399291, at \*4 (N.D. Cal. Feb. 16, 2021) (finding bank transaction histories constituted "contents" because they revealed personal details of the plaintiffs' lives and expenditures). The Complaint fails to plead anything to indicate how Plaintiffs' interactions with certain websites were intended to convey any message whatsoever.

        iii.     Plaintiffs Do Not Allege Partner Pixel Operators Intercepted Communications While "In Transit" Under the Second Clause of Section 631(a).

17

The second clause of Section 631(a) only protects a communication "while" it "is in transit . . . or is being sent from, or received at any place within this state". *Adler v. Cmty.com Inc.*, 2021 WL 4805435, at \*2 (C.D. Cal. Aug. 2, 2021); *Hammerling*, 615 F. Supp. 3d at 1093. The "crucial question" is whether the communication at issue was read "while it was still in transit, *i.e.* before it reached its intended recipient." *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021). Plaintiffs cannot meet their obligation to plead such in-transit interception by just "parrot[ing] the statutory language." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 643 (9th Cir. 2014). Rather, to satisfy the "in transit" element, Plaintiffs must allege facts about how the interception occurs, and a complaint that "does little more than restate the pleading requirement of real time interception" will be dismissed. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 758 (N.D. Cal. 2023).

Here, despite undertaking a lengthy discussion on how Partner Pixels interact with Wunderkind's trackers for "cookie syncing," which occurs *after* data is collected from Plaintiffs' browsers (*see* Compl. ¶¶ 44–51; 182–199), the Complaint lacks any allegations whatsoever about the timing of the Partner Pixels' purported interception of Plaintiffs' communications. Instead, Plaintiffs merely recite statutory elements to conclude that the operators of Partner Pixels "read, attempted to read, and learned the contents of electronic communications of Plaintiffs . . . while the electronic communications were in transit". Compl. ¶ 251. Courts have repeatedly rejected such conclusory allegations. *See, e.g., Dellasalla v. Samba TV, Inc.,* 2026 WL 1138358, at \*6 (N.D. Cal. Apr. 21, 2026) (conclusory allegations insufficient to establish CIPA "in-transit" requirement); *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024) (to plead in-transit interception, "factual allegations regarding the method, or nature, of interception are required"); *Valenzuela v. Super Bright LEDs Inc.*, 2023 WL 8424472,

18

at \*8–10 (C.D. Cal. Nov. 27, 2023) ("Alleging that the defendant's intercepted a communication in real time is insufficient, without specific facts about what was intercepted and when or how the interception took place.").

### D.  Plaintiffs Fail to State a Claim for Violation of CIPA § 632.

"To prevail on a Section 632 claim, a plaintiff must prove (1) an electronic recording of or eavesdropping on (2) a confidential communication (3) to which all parties did not consent." *Greenley v. Kochava, Inc.*, 684 F.Supp.3d 1024, 1052 (S.D. Cal. 2023) (citation and internal quotations omitted).

First, Plaintiffs' claim under Section 632 fails because the data alleged to be at issue is not a "communication" under the meaning of the statute. While CIPA itself does not define the term "communication," the California Court of Appeal has interpreted the term to mean "a singular conversation or exchange shared between two or more participants." *Gruber v. Yelp Inc.*, 55 Cal. App. 5th 591, 607 (2020). This is consistent with the legislative purpose of Section 632, to prevent "intrusion on one's thoughts, ideas, or knowledge." *People v. Drennan*, 84 Cal. App. 4th 1349, 1358 (2000) (photograph of individuals conversing does not capture a "communication"). "IP addresses and other device information" (Compl. ¶¶ 26, 150) are not a substantive communication conveying thoughts or ideas. As the Northern District of California recently confirmed, such information cannot be "communications" under CIPA because at most, such data "pertain[s] to *how*, not *what* information is relayed." *In re Apple Data Priv. Litig.*, 2026 WL 146025, at \*7 (N.D. Cal. Jan. 20, 2026) (emphasis in original). In finding that plaintiffs failed to plead a claim under Section 632, the court reasoned:

> [M]uch of the information Apple allegedly collected—the kind of mobile device used, the device's screen resolution, the device's keyboard language, what users tapped on, which apps users searched for, and how long an app was viewed—fell into the bucket of "non-content-based conduct coincident to the communication" as opposed to part of the "communication" itself.

*Id.*

In addition, even if Plaintiffs could demonstrate that their website activity constituted "communications," Plaintiffs fail to allege sufficient facts to show that such "communications" are "confidential." A communication is confidential under Section 632 if a participating party "has an objectively reasonable expectation that the conversation is not being overheard or recorded." *Flanagan v. Flanagan*, 27 Cal.4th 766, 777 (Cal. 2002). "California appeals courts have generally found that Internet-based communications are not 'confidential' within the meaning of [S]ection 632, because such communications can easily be shared by, for instance, the recipient(s) of the communications." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases). "As a result, courts 'have developed a presumption' that such communications do not give rise to the requisite expectation" that they are not being overheard or recorded. *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (citation omitted); *see also Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021) ("plaintiffs must plead unique, definite circumstances rebutting California's presumption against online confidentiality").

Here, there is no basis to deviate from the presumption that online communications are not "confidential" under Section 632. *See e.g. Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D.Cal. Dec. 23, 2019) ("internet communications—inquiring about items of clothing on a retail website" . . . did not "warrant[] a deviation" from the presumption that internet communications are not "confidential"). Plaintiffs merely allege routine visits to public websites like E! Online and plead nothing to overcome the presumption that their online interactions are not confidential.

20

### E.  Plaintiffs Fail to State a Claim for Violation of CIPA § 638.51.

Plaintiffs cannot maintain a cause of action under Section 638.51 because that section of CIPA, by its plain terms, applies only to the use of a trap and trace or pen register device *on a telephone*. See Cal. Penal Code § 638.50(b)-(c) (defining "pen register" and "trap and trace device" as involving "dialing, routing, addressing, or signaling information" from an instrument, facility, or source transmitting "wire or electronic communications"). Plaintiffs' cause of action necessarily requires this Court to expand the definition of trap and trace or pen register to encompass the use of technology on a website that merely collects users' "IP addresses and other device information"—technology that almost every single website employs. Compl. ¶¶ 26, 150. That expansion defies Section 638.51's plain text, its legislative history, and the bounds of reasonable public policy. Plaintiffs' claim under Section 638.51 does not concern Wunderkind's use of any technology related to a telephone and should be dismissed as a matter of law.

### 1.  The Plain Language of Section 638.51 Contemplates Only Telephones, Not Websites or Any Other Device.

Section 638.51(a) states that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53". Section 638.52 provides that a court may grant such an order only if it includes "[t]he identity, if known, of the person" associated with "*the telephone line* to which the pen register or trap and trace device is to be attached" and the "number and, if known, physical location *of the telephone line* to which the pen register or trap and trace device is to be attached." *Id.* § 638.52(d)(1), (3) (emphases added). No other technologies are referenced in Sections 638.51, 638.52, or 638.53, and the Court should not endorse Plaintiffs' attempt to stretch the express statutory language to apply to technologies not contemplated. *Tsering v. Meta*, 2026 WL 1433958, at *2 (N.D. Cal. May 21, 2026) (dismissing Section 638.51 claim: "Plaintiffs do not allege any facts indicating

21

that IP addresses or geolocation data were actually used as dialing, routing, addressing, or signaling information for the download or installation of the applications").

When interpreting a statute, a court's "fundamental task" is "to determine the Legislature's intent so as to effectuate the law's purpose." *People v. Lewis*, 11 Cal.5th 952, 961 (2021) (quotation marks omitted). To do so, courts "begin by examining the statute's words, giving them a plain and commonsense meaning." *Id.* (quotation marks omitted). To determine the "scope and purpose of the provision," courts "look to the entire substance of the statute" to "harmonize the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole." *Id.* (quotation marks omitted).

The plain language of the statutory framework surrounding Section 638.51 concerns law enforcement's use of trap and trace and pen register devices to track who a person is calling *by telephone*. The statute does not define those devices in any way that relates to tracking browsing activity on the internet, and indeed, does not permit a court to authorize the use of a trap and trace or pen register device on any other devices beyond the telephone. There is nothing in the text that suggests the California Legislature intended Section 638.51 to apply to website technology that captures such broad information as users' "IP addresses and other device information," (Compl. ¶¶ 26, 150).

Courts in California continue to dismiss civil Section 638.51 claims on that basis. For example, in *Schallert v. Palo Alto Networks, Inc.*, 2026 WL 754028, at *2 (Cal. Super. March 6, 2026), the court sustained a demurrer to a Section 638.51 claim without leave to amend because "[c]onstrued together, the provision of the CIPA therefore limit the scope of a trap and trace device to telephone lines." *See also Scharon v. Paramount Global*, 2025 WL 2996812, at *1 (Cal. Super. Oct. 3, 2025) (explaining that statutory language "strongly suggests that section

22

638.51 applies to telephone lines, not websites, because websites do not have lines, physical locations, or numbers."). Plaintiffs' interpretation of CIPA requires the Court to stretch Section 638.51 beyond its plain meaning.

### 2. The Legislative History of Section 638.51 Supports That the Section Only Applies to Telephone Communications, Not Websites.

The legislative history of the statute further supports the conclusion that Section 638.51 only applies to telephone communications. The Legislature passed the trap and trace and pen register statutes in 2015. *See* Kletzien Declaration, **Exhibit J**. The underlying bill, AB 929, was introduced because:

> [a]s technology advances, criminals are becoming more and more sophisticated in their use of technology to commit crimes and avoid law enforcement. As a result, law enforcement officials have a variety of electronic tools to counter this and help them apprehend criminals in this age of rapidly changing technology.
>
> One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers *from a particular telephone line*. In addition, another tool law enforcement uses is called a 'trap and trace device' which allows them to record what *numbers have called a specific telephone line*, i.e. all incoming phone numbers.

*Id.* at 10 (emphases added). The bill was thus introduced to specifically govern law enforcement's use of devices to record information from *telephones*—not websites, although the bill came nearly two decades **after** the widespread adoption of the internet by individuals for commercial activity, and nearly a decade **after** the introduction of the first iPhone.

The California State Legislature reaffirmed that Section 638.51 applies only to devices that collect call data from telephone lines the very next year. In 2016, the Legislature passed AB 1924, which primarily added an exemption to California's Electronic Communication Privacy Act ("CECPA") (Cal. Penal Code §§ 1546, *et seq.*) to allow orders for trap and trace and pen register devices issued under Section 638.52 to remain valid for 60 days rather than the 10 days

23

the CECPA otherwise provides. Kletzien Decl., **Exhibit K** at 1. The bill analysis for AB 1924 in the Assembly Committee on Public Safety, again provided that "[p]en registers and track and trace devices generally track incoming and outgoing *telephone calls*." (*Id.* at 6; emphasis added.) And the AB 1924 bill analysis in the Assembly Committee on Privacy and Consumer Protection provided that AB 1924:

> is intended to address a conflict between recently amended statutes that would interfere with law enforcement agencies' ability to seek a 60-day pen register/trap-and trace-device, *which are telephone surveillance devices used to record incoming and outgoing phone numbers*.

Kletzien Decl., **Exhibit L** at 2; emphasis added.

The legislative history thus further supports dismissal of Plaintiffs' Section 638.51 claim. *See Blalock v. EquipmentShare.com Inc.*, 2026 WL 330067, at *2 (Cal. Super. Jan. 27, 2026) ("[G]iven the legislative intent, the Court finds the purpose of the statute is to prevent the use of pen registers and trap and trace devices on *telephones*.") (emphasis in original); *Schallert v. Orkin LLC*, 2025 WL 4332757, at *5 (Cal. Super. Dec. 15, 2025) ("[s]urely, if the Legislature intended its definition of a 'trap and trace' device to broadly regulate tracking software by websites, there would be at least some discussion of that issue in the legislative history"); *Rodriguez v. Ink Am. Intern. Group LLC*, 2025 WL 4034985, at *3 (Cal. Super. Dec. 10, 2025) ("CIPA's structure and history indicate that its pen-register provisions were aimed at telephonic-style surveillance, not at the routine operation of commercial websites or analytical software"). Accordingly, Plaintiffs' Section 638.51 claim must be dismissed.

## F. Plaintiffs Fail to State a Claim for Violating the ECPA.

The ECPA "generally prohibits the interception or wiretapping of electronic communications not authorized by a court of law or permitted by one of the statute's exceptions." *United States v. Jiau*, 734 F.3d 147, 151 (2d Cir. 2013) (citing 18 U.S.C. § 2511).

24

One such statutory exception is provided "where one of the parties to the communication has given prior consent to such interception" unless "such communication is intercepted for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). Here, Plaintiffs' own Complaint alleges that website operators *chose* to incorporate Wunderkind's tracking tools into their websites—and thus gave consent. *See, e.g.,* Compl. ¶ 276 ("the Partner Websites installed Defendant's tracking technology on their respective websites"); ¶ 68 ("[T]he owner of the website partnering with Wunderkind requests that Defendant sets a cookie onto the browser or device of the person visiting the website."). This defeats Plaintiffs' ECPA claim. *See Cohen v. Casper Sleep Inc.*, 2018 WL 3392877 at *3 (S.D.N.Y. July 12, 2018) ("[i]t is clear that the [website operators] were parties to the communications and [data broker] had their consent."); *Rodriguez*, 2021 WL 2026726, at *6 (no ECPA violation where "alleged interceptions occurred with the consent of app developers"); *Sloan v. Anker Innovations, Ltd.*, 711 F. Supp. 3d 946, 957 (N.D. Ill. 2024) (dismissing ECPA claim because "the communication necessarily requires Defendants' participation, even if Plaintiffs did not intend to share their information with Defendants"); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145 (dismissing ECPA claim where internet advertising providers "were parties to any communications that they acquired").

Plaintiffs try to avoid dismissal of their claim by invoking the ECPA's crime-tort exception and asserting in conclusory fashion that their communications were used[10] "for the purpose of committing a criminal or tortious act . . . .". Compl. ¶ 295. This conclusory allegation plainly fails.

---

[10] Notably, the crime-tort exception applies only if a communication is "intercepted"—not used—"for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d).  Plaintiffs do not plead any such interception.

In the Second Circuit, the crime-tort exception is "construed narrowly." *Jiau*, 734 F.3d at 152. "[T]o survive a motion to dismiss, a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is independent of the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010). The crime or tort must have been the "primary motivation" or "a determinative factor" for the defendant's conduct. *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001); *see also United States v. Tarantino,* 617 F. App'x. 62, 65 (2d Cir. 2015) (summary order). The exception "is confined to instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party." *Jiau*, 734 F.3d at 152.

In *Camm*, plaintiffs brought similar ECPA claims arising from defendant's use of "'tracking pixels' and 'third-party cookies' that capture sensitive personal information provided by website users" which it used to "target[] online advertising." 2026 WL 861670, at *1 (Failla, J.). This Court dismissed plaintiffs' ECPA claim, finding the complaint failed to show "that Reach's disclosure of their information for marketing purposes evinced an intent to commit a crime or tort." *Id*. at *5. The Court reasoned that although the complaint alleged that Reach "intentionally configured the Tracking Tools on its website to enable third parties like Google to capture user-specific information," it also demonstrated that "Reach's motivation in doing so was primarily commercial." *Id*. "Indeed, the collection and disclosure of Plaintiffs' information were the means [Reach] used to achieve [its] real purpose—marketing." *Id*. (internal quotations omitted); *see also Cohen*, 2018 WL 3392877, at *4 (defendant's primary purpose was not to commit a tort where it collected data for marketing purposes).

26

Here, the Complaint admits no criminal or tortious purpose—Plaintiffs acknowledge that Wunderkind's purpose in developing tracking tools was for "targeted individualized advertisements," to "improve [] overall marketing strategy," and to "help [advertisers] achieve their targeted marketing aims". Compl. ¶¶ 2, 35, 81. In other words, Plaintiffs concede that Wunderkind's "primary motivation" was not to perpetuate torts but simply "to make money." *In re DoubleClick Inc. Priv. Litig.,* 154 F. Supp. at 519; *see also In re Meta Pixel Healthcare Litig.,* 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (crime-tort exception is "inapplicable where the defendant's primary motivation was to make money"). Thus, the crime-tort exception is inapplicable to save Plaintiffs' ECPA claim.[11]

### G. Plaintiffs Fail to State a Claim for Violation of N.Y.G.B.L. § 349.

Plaintiffs' GBL claim must be dismissed for failure to plead a cognizable injury. To state a claim under GBL § 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (2012). To establish injury, Plaintiffs must allege a "connection between the misrepresentation and any harm from, or failure of, the product." *Small v. Lorillard Tobacco Co., Inc.,* 94 N.Y.2d 43, 57 (1999).

Dealing with substantially similar allegations brought against a data broker and retailer website, the court in *Cohen,* 2018 WL 3392877 at *7, dismissed plaintiff's GBL claim, finding allegations of "general invasion of privacy 'through the exposure of personal and private information'" insufficient to establish injury. The lack of allegations "that any 'expos[ed]'

---

[11] As discussed in Section II(C)(1)(ii), *supra,* Plaintiffs also fail to plausibly allege that the "contents" of their communications were intercepted. *See, e.g., In re Zynga Priv. Litig.,* 750 F.3d 1098, 1107 (9th Cir. 2014). Plaintiffs' ECPA claim fails on that basis as well. *See* 18 U.S.C. § 2510(4) (defining "intercept" as "the aural or other acquisition of the <u>contents</u> of any wire, electronic, or oral communication . . .) (underline added).

27

information was particularly sensitive or that it was 'expose[d]' for any reason other than marketing" was fatal, and the court explained that invasion of privacy does not constitute a GBL injury unless the information at issue was "presumptively confidential". *Id*. (citation omitted).

Plaintiffs assert the same generalized "invasion of privacy" harm rejected in *Cohen* and many other courts analyzing GBL injury. *Compare* Compl. ¶¶ 192, 206 *with Smith v. Chase Manhattan Bank, USA, N.A.*, 293 A.D.2d 598, 599 (2d Dep't 2002) (no injury where defendants sold plaintiffs' "confidential financial information," resulting in products and services being offered to plaintiffs); *Amalfitano v. NBTY Inc.*, 128 A.D.3d 743, 746 (2d Dep't 2015) (no injury where plaintiff alleged that his email address was taken); *Shostack v. Diller*, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016) (holding that an "unquantifiable injury to a privacy interest" is not a cognizable injury under the GBL). Plaintiffs' lack of injury is fatal to their cause of action and their GBL claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Wunderkind respectfully requests that the Court enter an Order granting its motion and dismissing the Consolidated Amended Class Action Complaint in its entirety with prejudice, and awarding such other relief as the Court deems just and proper.

Dated: May 29, 2026                    Respectfully submitted,

*/s/ Mark S. Melodia*

Mark S. Melodia (5059381)
Qian (Sheila) Shen (5451356)
Sophie L. Kletzien (5860309)
**HOLLAND & KNIGHT LLP**
787 Seventh Avenue, Floor 31
New York, NY 10019
(212) 513-3200
mark.melodia@hklaw.com
qian.shen@hklaw.com
sophie.kletzien@hklaw.com

28

Ashley L. Shively (*admitted pro hac vice*)
**HOLLAND & KNIGHT LLP**
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6900
ashley.shively@hklaw.com

*Attorneys for Defendant Wunderkind Corporation*

29

# WORD COUNT CERTIFICATION

I, the undersigned, hereby certify that this Memorandum contains 8,749 words—inclusive of footnotes and exclusive of any captions, indexes, tables, signature blocks, and required certificates—and it is in compliance with Local Rule 7.1 of the Southern District of New York. In preparing this certification, I relied on the word count of the word-processing system used to prepare this document.

DATED: May 29, 2026

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Mark S. Melodia*
Mark S. Melodia (5059381)
Qian (Sheila) Shen (5451356)
Sophie L. Kletzien (5860309)

30