**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

*IN RE WUNDERKIND PRIVACY LITIGATION*

Case No. 1:25-cv-05854-KPF

Hon. Katherine Polk Failla

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
Max S. Roberts
Victoria X. Zhou
1330 Ave. of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-mail: ykopel@bursor.com
         aleslie@bursor.com
         mroberts@bursor.com
         vzhou@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

**JANOVE PLLC**
Raphael Janove
115 Broadway, 5th Fl.
New York, NY 10006
Telephone: (646) 347-3940
E-mail: raphael@janove.law

**JANOVE PLLC**
Liana Vitale
979 Osos St., Ste. A5
San Luis Obispo, CA 93401
E-mail: liana@janove.law

*Interim Class Counsel*

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ........................................................................................................1

ARGUMENT ............................................................................................................2

I.    PLAINTIFFS HAVE ARTICLE III STANDING................................................2

    A.    Defendant's Unconsented-To Profiling Of Users And
        Dissemination Of Those Profiles To Further Third Parties Is An
        Injury-In-Fact ..........................................................................................2

    B.    Plaintiffs' Harms Are Traceable To Defendant's Conduct......................7

II.   CALIFORNIA LAW APPLIES TO PLAINTIFFS' CLAIMS ............................9

III.  PLAINTIFFS STATE AN INTRUSION UPON SECLUSION CLAIM..........13

    A.    Defendant Was Not A "Party" To Plaintiffs' Communications With
        The Partner Websites, And So Intruded Upon Them As A Third
        Party Eavesdropper ................................................................................13

    B.    Defendant's Comprehensive Profiling Of Plaintiffs—And The
        Dissemination Of Those Profiles To Numerous Third Parties—Was
        "Highly Offensive" ................................................................................16

IV.   PLAINTIFFS PLAUSIBLY ALLEGE A CIPA § 631(A) CLAIM .................17

V.    PLAINTIFFS PLAUSIBLY ALLEGE A CIPA § 632 CLAIM ......................18

VI.   PLAINTIFFS PLAUSIBLY ALLEGE A CIPA § 638.51 CLAIM..................21

VII.  PLAINTIFFS PLAUSIBLY ALLEGE AN ECPA CLAIM ............................23

CONCLUSION.......................................................................................................24

i

## TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Amusement Indus., Inc. v. Stern*,
   693 F. Supp. 2d 301 (S.D.N.Y. 2010) ........................................................................ 11

*Anderson v. National Collegiate Athletic Association*,
   2026 WL 925519 (C.D. Cal. Mar. 25, 2026) ..................................................... 5, 8, 21

*Belridge Farms v. Agricultural Labor Relations Bd.*,
   21 Cal. 3d 551 (1978) ................................................................................................. 22

*Briskin v. Shopify, Inc.*,
   135 F.4th 739 (9th Cir. 2025) .................................................................................... 12

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..................................................................... 23

*Camm v. Reach Financial, LLC*,
   2026 WL 861670 (S.D.N.Y. Mar. 30, 2026) ..................................................... 6, 13, 15

*Camplisson v. Adidas Am., Inc.*,
   809 F. Supp. 3d 1095 (S.D. Cal. 2025) ........................................................................ 4

*Carr v. Cove*,
   33 Cal. App. 3d 851 (4th Dist. 1973) ........................................................................... 9

*Castillo v. Costco Wholesale Corp.*,
   2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ................................................... 10, 12

*Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*,
   603 U.S. 799 (2024) ................................................................................................... 22

*D'Antonio v. Cable News Network, Inc.*,
   2026 WL 960032 (S.D.N.Y. Apr. 9, 2026) ................................................................ 4, 6

*Deivaprakash v. Condé Nast Digital*,
   798 F. Supp. 3d 1100 (N.D. Cal. 2025) ........................................................................ 3

*Dellasala v. Samba TV, Inc.*,
   2026 WL 1138358 (N.D. Cal. Apr. 21, 2026) ......................................................... 20, 21

*Dept. of Justice v. Reporters Committee for Freedom of Press*,
   489 U.S. 749 (1989) ..................................................................................................... 4

*DKN Holdings LLC v. Faerber*,
   61 Cal. 4th 813 (2015) ................................................................................................. 9

*Doe v. Kaiser Found. Health Plan, Inc.*,
   2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) .......................................................... 12

*Dorsey v. Yantambwe*,
   276 A.D.2d 108 (4th Dep't 2000) ............................................................................. 10

*Drummer v. Costar Grp., Inc.*,
   2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ............................................................ 7

*Estate of Parker v. Mississippi Dep't of Public Safety*,
   140 F.4th 226 (5th Cir. 2025) ..................................................................................... 8

*Frasco v. Flo Health, Inc.*,
   349 F.R.D. 557 (N.D. Cal. 2025) ................................................................................ 5

*Fregosa v. Mashable, Inc.*,
   2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ................................................... 7, 19, 21

*Fregosa v. Mashable, Inc.*,
   2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ............................................................. 21

*Freifeld v. Epsilon Data Management, LLC*,
   2026 WL 1759012 (N.D. Ill. June 15, 2026) ..................................................... Passim

*Gabrielli v. Insider, Inc.*,
   2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) ............................................................ 5, 6

*Gabrielli v. Motorola Mobility LLC*,
   2025 WL 1939957 (N.D. Cal. July 14, 2025) ............................................................. 4

*Gilligan v. Experian Data Corp.*,
   2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ......................................................... Passim

*Gladstone v. Amazon Web Servs., Inc.*,
   739 F. Supp. 3d 846 (W.D. Wash. 2024) ................................................................. 16

*Golden Archer Invs., LLC v. Skynet Fin. Sys.*,
   908 F. Supp. 2d 526 (S.D.N.Y. 2012) .................................................................. 11, 12

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ...................................................................... 15

*Harris v. iHeartMedia, Inc.*,
   2026 WL 247875 (N.D. Cal. Jan. 29, 2026)...................................................................... 4

*Hecht v. City of New York*,
   60 N.Y.2d 57 (1983)............................................................................................................ 9

*In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com,)*,
   396 F. Supp. 2d 45 (D. Mass. 2005)................................................................................ 22

*In re Facebook, Inc. Internet Tracking Litig.*,
   956 F.3d 589 (9th Cir. 2020) ................................................................................. 14, 15, 16

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
   806 F.3d 125 (3d Cir. 2015) .............................................................................................. 15

*In re Google RTB Consumer Privacy Litig.*,
   606 F. Supp. 3d 935 (N.D. Cal. 2022)................................................................................ 8

*In re Meta Pixel Tax Filing Cases*,
   793 F. Supp. 3d 1147 (N.D. Cal. 2025).............................................................................. 8

*James v. Walt Disney Co.*,
   701 F. Supp. 3d 942 (N.D. Cal. 2023)................................................................... 6, 17, 18

*Javier v. Assurance IQ, LLC*,
   649 F. Supp. 3d 891 (N.D. Cal. 2023).............................................................................. 15

*Ji v. Naver Corp.*,
   2022 WL 4624898 (N.D. Cal. Sept. 30, 2022).................................................................. 5

*Joiner v. NFL Enterprises, Inc.*,
   2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025).................................................................. 11

*Jones v. Skullcandy, Inc.*,
   2026 WL 699819 (S.D. Cal. Mar. 12, 2026) ............................................................. 20, 21

*K.T. v. Dash*,
   37 A.D.3d 107 (1st Dep't. 2006)...................................................................................... 11

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023)................................................................................ 1

*Khamooshi v. Politico LLC*,
   2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ..................................................................... 5

*Krock v. Lipsay*,
    97 F.3d 640 (2d Cir. 1996) ........................................................................................ 10

*Krzyzek v. OpenX Techs., Inc.*,
    817 F. Supp. 3d (N.D. Cal. 2026)..................................................................Passim

*Lane v. Am. Airlines, Inc.*,
    2022 WL 1062992 (E.D.N.Y. Apr. 8, 2022) ............................................................ 11

*Lesh v. Cable News Network, Inc.*,
    767 F. Supp. 3d 33 (S.D.N.Y. 2025) ................................................................. 14, 21

*Lewis v. Magnite, Inc.*,
    2025 WL 3687456 (C.D. Cal. Dec. 4, 2025)....................................................... 1, 22

*Liau v. Weee! Inc.*,
    2024 WL 729259 (S.D.N.Y. Feb. 22, 2024) ............................................................. 6

*Maghoney v. Dotdash Meredith, Inc.*,
    2026 WL 497402 (S.D. Cal. Feb. 23, 2026)............................................................. 5

*Maketa v. Valnet Inc.*,
    2026 WL 323126 (N.D. Cal. Feb. 6, 2026) ............................................................ 23

*Manier v. Triple Lift Inc.*,
    2026 WL 1295546 (C.D. Cal. Apr. 15, 2026) .......................................................... 1

*Marden v. LMND Med. Grp., Inc.*,
    2024 WL 4448684 (N.D. Cal. July 3, 2024) .......................................................... 23

*McClung v. AddShopper, Inc.*,
    2024 WL 189006 (N.D. Cal. Jan. 17, 2024)......................................................... 8, 9

*Myers v. Dick's Sporting Goods, Inc.*,
    2026 WL 1045528 (E.D. Cal. Apr. 17, 2026) .......................................................... 3

*New Jersey Bankers Association v. Attorney General New Jersey*,
    49 F.4th 849 (3d Cir. 2022) ...................................................................................... 8

*Ortiz v. Foris Dax, Inc.*,
    2026 WL 1430720 (N.D. Cal. May 21, 2026).................................................... 21, 22

*Popa v. Harriet Carter Gifts*,
    52 F.4th 121 (3d Cir. 2022) .................................................................................... 10

v

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ................................................................................ 6

*R.S. v. Prime Healthcare Servs., Inc.*,
2025 WL 103488 (C.D. Cal. Jan. 13, 2025) ........................................................ 24

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...................................................... 19

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ................................................... 1, 16, 23, 24

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) .................................................................. 13

*Scharon v. Paramount Global*,
2025 WL 2996812 (Los Angeles Super. Ct. Oct. 3, 2025) .................................. 22

*Selby, v. Sovrn Holdings, Inc.*,
2025 WL 2950164 (N.D. Cal. Oct. 17, 2025) ......................................... 1, 10, 11, 16

*Semien v. PubMatic Inc.*,
2026 WL 216333 (N.D. Cal. Jan. 27, 2026) ................................................. 1, 23

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 923 (N.D. Cal. 2024) .................................................................. 14

*Smidga v. Spirit Airlines, Inc.*,
2024 WL 1485853 (W.D. Pa. Apr. 5, 2024) ........................................................... 6

*Smith v. Rack Room Shoes, Inc.*,
2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) ......................................................... 17

*Stein v. Edward-Elmhurst Health*,
2025 WL 580556 (N.D. Ill. Feb. 21, 2025) .......................................................... 24

*Taylor v. ConverseNow Techs., Inc.*,
2025 WL 2308483 (N.D. Cal. Aug. 11, 2025) ................................................. 15, 19

*Timothee v. Meta Platforms, Inc.*,
2026 WL 1130363 (N.D. Cal. Apr. 27, 2026) ......................................................... 5

*Torres v. Seatgeek, Inc.*,
2026 WL 1495202 (N.D. Cal. May 28, 2026) ....................................................... 21

vi

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................................................... 5

*Turner v. Nuance Commc'ns, Inc.*,
  735 F. Supp. 3d 1169 (N.D. Cal. 2024)................................................................. 15

*Xu v. Reuters News & Media Inc.*,
  2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ........................................................... 5

*Xu v. Reuters News & Media, Inc.*,
  2025 WL 3035016 (Santa Clara Super. Ct. Oct. 24, 2025) ..................................... 6

*Yockey v. Salesforce, Inc.*,
  688 F. Supp. 3d 962 (N.D. Cal. 2023)................................................................... 19

*Zanotti v. Invention Submission Corp.*,
  2020 WL 2857304 (S.D.N.Y. June 2, 2020) ........................................................... 5

## STATUTES

Cal. Pen. Code § 629.51(a)(2) ..................................................................................... 19

N.Y. Gen. Bus. Law § 349.................................................................................... 12, 24

## RULES

Fed. R. Civ. P. 8(d)(2)-(3)........................................................................................... 13

Plaintiffs Erin Weiler and Tosin Balogun ("Plaintiffs") respectfully submit this Opposition to Defendant Wunderkind Corporation's ("Defendant") Motion to Dismiss the Consolidated Class Action Complaint (ECF No. 53) (the "Motion" or "MTD").

## INTRODUCTION

Defendant frames this case as "vilify[ing] innocuous website technologies that help businesses optimize advertising." MTD at 1. On the contrary, it is about ensuring data brokers like Defendant cannot compile information about virtually every aspect of Americans' lives and disclose that information to whoever they want and whenever they want for profit and without consent.

To wit, numerous courts have evaluated allegations against data brokers like Defendant who track users across the Internet, compile that information into comprehensive profiles which contain details about numerous aspects of users' lives—or match users up to profiles with identifiers like IP addresses and device information—and disclose those profiles for use in advertising. Courts have sustained claims and found Article III standing in every single one. *See*, *e.g.*, *Freifeld v. Epsilon Data Management, LLC*, 2026 WL 1759012, at *7 (N.D. Ill. June 15, 2026); *Gilligan v. Experian Data Corp.*, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 871 (N.D. Cal. 2026); *Semien v. PubMatic Inc.*, 2026 WL 216333, at *11 (N.D. Cal. Jan. 27, 2026); *Selby, v. Sovrn Holdings, Inc.*, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1095 (N.D. Cal. 2025); *Manier v. Triple Lift Inc.*, 2026 WL 1295546, at *7 (C.D. Cal. Apr. 15, 2026); *Lewis v. Magnite, Inc.*, 2025 WL 3687546, at *13 (C.D. Cal. Dec. 4, 2025); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 929 (N.D. Cal. 2023).

Defendant's arguments—largely the same as those trotted out in the above authorities—

give the Court no reason to chart a different path.  Nor do Plaintiffs' allegations, which quote Defendant as bragging its staple of consumer profiles is "more than most identity solutions have collected in their existence."  *See* Consolidated Class Action Compl. ("CAC") ¶ 125 (cleaned up).  Defendant's "1 billion consumer profiles" encompass information collected from Plaintiffs and other users "across the internet, including their shopping habits, financial status and information, health information, political leanings and interests, and the media they consume," tied to over 9 billion devices and 2 trillion digital transactions *Id.* ¶¶ 11, 124, 263.  And those profiles are not only not "anonymous," Defendant's ability to track users "circumvents common privacy controls."  *Id.* ¶¶ 57-64, 136-139.

So, Defendant collects more information on consumers than many other data brokers, discloses that information to numerous other third parties, and misrepresents how "privacy protective" its surveillance is.  That is not conduct the law protects.  And, at least at the pleadings stage, those allegations are not so scant as to be dismissed outright.  Thus, and for the following reasons, Defendant's Motion should be denied.

## ARGUMENT

### I.    PLAINTIFFS HAVE ARTICLE III STANDING

#### A.    Defendant's Unconsented-To Profiling Of Users And Dissemination Of Those Profiles To Further Third Parties Is An Injury-In-Fact

Defendant argues Plaintiffs have not alleged an injury-in-fact because "there is nothing highly offensive about a third-party learning that an individual visited [a website] … [or] about having one's anonymized email address. IP address, or device information collected or shared."  MTD at 6 (cleaned up).  Of course, Plaintiffs allege the information Defendant collects is *not* anonymous.  CAC ¶¶ 57-64, 136, 185.  Regardless, Defendant's arguments miss the forest for the trees.   In determining whether plaintiffs have alleged an injury-in-fact, "courts … have

2

distinguished between tracking technologies that create [] a cradle-to-the-grave profile of sensitive, personally revealing information gathered across the internet and those that are more reminiscent of a store clerk's observing shoppers and found that only the former confer standing." *Myers v. Dick's Sporting Goods, Inc.*, 2026 WL 1045528, at *4 (E.D. Cal. Apr. 17, 2026) (cleaned up).

Plaintiffs' allegations fall into the former category. Defendant is a data broker that "engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of [] Plaintiff's online web browsing activity tied to [his] … personal identifiers," including "information regarding users' activity on websites and communications with websites in the form of full-string URLs and button click events." *Gilligan*, 2026 WL 32259, at *2.

In other words, Plaintiffs' allegations are not just that Defendant collects certain information from websites. They are that (i) Defendant uses the information it collects to link users to comprehensive, non-anonymous profiles—anchored to users' personal identifiers like email addresses, phone numbers, and device IDs—containing consumers' "shopping habits, financial status and information, health information, political leanings and interests, and the media they consume"; (ii) that such linkage occurs by bypassing the normal "restriction that sites can't read each other[s'] cookies"; and (iii) that those profiles are offered up for sale to a near endless supply of advertisers and other data brokers without users' knowledge or consent. *See, e.g.*, CAC ¶¶ 1-2, 7, 11, 13, 26, 28, 34-38, 43, 49-52, 54, 68, 113-140, 144-145, 151, 183-184, 186-189, 196-200. "Accordingly, it does not matter whether [Plaintiffs] had a reasonable expectation of privacy in the information collected because the privacy violation extends beyond the collection … it encompasses how that collection allegedly allowed [Defendant] to: (1) build a profile reflecting [Plaintiffs'] personal information; and (2) interfere with [their] ability to remain anonymous." *Deivaprakash v. Condé Nast Digital*, 798 F. Supp. 3d 1100, 1106-07 (N.D. Cal. 2025).

3

Courts in this District and elsewhere have found these allegations give rise to Article III standing. *See*, *e.g.*, *D'Antonio v. Cable News Network, Inc.*, --- F. Supp. 3d ---, 2026 WL 960032, at *5 (S.D.N.Y. Apr. 9, 2026) (standing alleged where plaintiff alleged collection data brokers "to uniquely identify and de-anonymize Website users by matching users' their IP addresses, Device Metadata, and unique ID values with comprehensive profiles" and selling those profiles "through the real-time bidding process") (cleaned up); *Harris v. iHeartMedia, Inc.*, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (same); *Krzyzek*, 817 F. Supp. 3d at 863 (same where "OpenX loaded its pixel onto websites they visited … created a new user profile of them or matched them to a pre-existing profile, collected and tracked their browsing activity while on those websites, and then tracked their future web browsing activity across the internet"); *Gilligan*, 2026 WL 32259, at *2 (same where plaintiffs "alleged that they were subject to these profile-building practices"); *Gabrielli v. Motorola Mobility LLC*, 2025 WL 1939957, at *6 (N.D. Cal. July 14, 2025) ("Gabrielli's allegations that Motorola deprived him control of personal information regarding his digital activity and profile are sufficient to establish a concrete injury to his right to privacy and confer standing."); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (standing alleged where "the collection of Plaintiffs' information concerns their person, is [] broad[] in scope, and has been found to be a privacy harm in a wide variety of case").

In this way, Plaintiffs and others lost the right to "control [] information concerning [their] person," which is encompassed within "both the common law and the literal understandings of privacy." *Dept. of Justice v. Reporters Committee for Freedom of Press*, 489 U.S. 749, 763 (1989); *Harris*, 2026 WL 247875, at *2 ("The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a 'close relationship' to traditional harms – *i.e.*, the loss of the ability to control information about himself and to avoid the broad dissemination of that information.");

4

*Anderson v. National Collegiate Athletic Association*, 2026 WL 925519, at \*5 (C.D. Cal. Mar. 25, 2026). This is at least analogous to the tort of intrusion upon seclusion, although standing does "not require an exact duplicate." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 433 (2021); *see also Frasco v. Flo Health, Inc.*, 349 F.R.D. 557, 580 (N.D. Cal. 2025) ("[T]he harm made actionable at common law was an individual's loss of control over her private affairs or concerns by an interloper's tortious intentional interference.") (cleaned up).[1]

Defendant tries to analogize this case to several off-point authorities that don't base standing on the compilation and dissemination of profiles containing sensitive information like Plaintiffs' here. *See Timothee v. Meta Platforms, Inc.*, 2026 WL 1130363, at \*4 (N.D. Cal. Apr. 27, 2026) (noting plaintiffs' argument that standing exists was based on collection of their information and "receiving targeted advertisements," not based on linkage to or compilation and dissemination of profiles); *Khamooshi v. Politico LLC*, 2025 WL 2822879, at \*2 (N.D. Cal. Oct. 2, 2025) (same); *Ji v. Naver Corp.*, 2022 WL 4624898, at \*7 (N.D. Cal. Sept. 30, 2022) (same); *Maghoney v. Dotdash Meredith, Inc.*, 2026 WL 497402, at \*2 (S.D. Cal. Feb. 23, 2026) ("Plaintiff merely alleges a *speculative future risk* of identity theft and digital profiling.") (emphasis added).

That fact also distinguishes *Xu v. Reuters News & Media Inc.*, 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) ("*Xu I*"), and *Gabrielli v. Insider, Inc.*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) involved allegations of widespread profiling that included sensitive information like those here. Moreover, when the *Xu* plaintiff refiled his case in state court with similar allegations to those here

---

[1] Defendant has conceded allegations like Plaintiffs suffice for Article III standing. Defendant removed the *Wine* action—which contained materially similar allegations to those here—to federal court. *See* ECF No. 33. The removal of *Wine* to federal court is an implicit concession that Article III standing exists. *Zanotti v. Invention Submission Corp.*, 2020 WL 2857304, at \*7 (S.D.N.Y. June 2, 2020) ("Defendants cannot rely on CAFA to justify the court's continued exercise of jurisdiction over the claims against them while simultaneously arguing that the court must dismiss those same claims for lack of subject matter jurisdiction.").

(*id.* Ex. 6), the court had no trouble finding standing. *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Santa Clara Super. Ct. Oct. 24, 2025) ("Plaintiff alleges that the collected information was used to build a profile for users based on their information, interests, and interferences.  Therefore, whether Plaintiff has a reasonable expectation of privacy to the collected information does not preclude him from alleging an invasion of privacy injury.") (cleaned up). Likewise, when a different plaintiff brought allegations against Insider that were similar to those here, Insider (represented by the same counsel) removed the action to federal court.  *See Pflaumer v. Insider, Inc.*, Case No, 5:25-cv-7481, ECF No. 1 (N.D. Cal. Sept. 4, 2025).  Thus, Insider has asserted that allegations like D'Antonio's are sufficient for Article III standing.

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), is "distinguishable from the facts presented in this case, where the collection of Plaintiffs' information concerns their person, is much broader in scope, and has been found to be a privacy harm in a wide variety of cases." *D'Antonio*, 2026 WL 960032, at *5.  *Smidga v. Spirit Airlines, Inc.*, 2024 WL 1485853, at *2 (W.D. Pa. Apr. 5, 2024), involved the same "Session Replay" technology at issue in *Popa* and so is distinguishable for the same reasons.  And *Liau v. Weee! Inc.*, 2024 WL 729259 (S.D.N.Y. Feb. 22, 2024), "was a data breach case," and thus turned on a different factual analysis.  *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 951 (N.D. Cal. 2023).

Last, although this Court dismissed the plaintiffs' intrusion upon seclusion claim in *Camm v. Reach Financial, LLC*, 2026 WL 861670 (S.D.N.Y. Mar. 30, 2026), the Court did not evaluate allegations of profiling by a third party eavesdropper, and did not dismiss the case for lack of Article III standing.

In sum, Plaintiffs have suffered an injury in fact based on Defendant's compilation of comprehensive, non-anonymous profiles concerning virtually every aspect of Plaintiffs' lives

(including sensitive information), and the dissemination of those profiles to further third parties for profit, all without consent. Defendants' cases concerning different technology or no allegations of profiling are inapposite.

### B.    Plaintiffs' Harms Are Traceable To Defendant's Conduct

Defendant attempts to shirk its responsibility for its role in "the biggest data breach ever recorded" (CAC ¶ 40 (cleaned up)), arguing that "Plaintiffs also fail to plead that their harm is traceable to Wunderkind.  There is nothing more than Plaintiffs' conclusory say-so that Wunderkind caused various unspecified advertisements to be presented to Plaintiffs." MTD at 8. Not so.  Plaintiffs specifically allege that Defendant played a role in the advertisements Plaintiffs were shown (*see*, *e.g.*, CAC ¶¶ 123, 135, 163, 170, 181, 188-189, 199-200),[2] and that their harms are traceable to Defendant's conduct. CAC ¶¶ 188-189, 192, 199-200, 206.

Plaintiffs allege Defendant acts "in concert with" the various Partner Pixels and Partner Websites to disseminate and monetize Plaintiffs' information.  *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *8 (N.D. Cal. Oct. 9, 2025); *see also*, *e.g.*, CAC ¶¶ 13, 25, 29, 51, 68, 116, 140, 145.  Plaintiffs further allege Defendant maintains the comprehensive profiles and builds on them by not only collecting further information, but making inferences about Plaintiffs' characteristics. *See*, *e.g.*, CAC ¶¶ 114-127, 134, 136.  And it is unfathomable to believe Defendant had no part in the harms that befell Plaintiffs given it tracked Plaintiff Weiler *over 45,000 times*, and Plaintiff Balogun no fewer than dozens of times.  *Id.* ¶ 3.

---

[2] That being said, Plaintiffs' harm "is not dependent on whether they actually received targeted advertisements." *Drummer v. Costar Grp., Inc.*, 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025) (cleaned up).  The targeted advertisements are a symptom of Defendant's harmful conduct, not necessarily the harm itself.

Thus, Plaintiffs' harms—the compilation of profiles containing their personal information and dissemination of those profiles for sale, all without consent—are traceable to Defendant's conduct. *See*, *e.g.*, *McClung v. AddShopper, Inc.*, 2024 WL 189006, at *2 (N.D. Cal. Jan. 17, 2024) ("[T]he plaintiffs clearly have alleged standing to sue AddShoppers: it orchestrated the scheme and then directly took the injury-causing actions."); *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1152 (N.D. Cal. 2025) ("The fact that the complaint alleges that the Pixel allows Meta to collect data in real time in order to provide third-party websites with the analytics services that flow from installation of the Pixel defeats any notion that Meta does not itself use the Pixel for the purposes of Section 638.50(b)."); *In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 941, 943 (N.D. Cal. 2022) (finding Article III standing where "[t]hrough RTB, Google solicits participants to bid on sending an ad to a specific individual" and "Google provides highly specific information about the target in the bid request . . . including data that identifies the individual being targeted through unique identifiers, device identifiers, geolocation, IP address, cookie match, and other information").

Defendant complains that because other actors may have also contributed to Plaintiffs' harms, Plaintiffs cannot trace their harm "*only* to Wunderkind." MTD at 10 (emphasis added). But the fact "[D]efendant is only one of several persons who caused the harm does not preclude a finding of causation sufficient to support standing." *Estate of Parker v. Mississippi Dep't of Public Safety*, 140 F.4th 226, 236-37 (5th Cir. 2025) (cleaned up); *see also*, *e.g.*, *New Jersey Bankers Association v. Attorney General New Jersey*, 49 F.4th 849, 855 n.1 (3d Cir. 2022) ("concurrent causation" suffices for traceability); *Anderson*, 2026 WL 925519, at *8 (finding statutory standing to sue "[e]ven if Defendants were not responsible for every aspect of Plaintiffs' injuries").

8

On the contrary, multiple defendants can combine to harm Plaintiffs. *See DKN Holdings LLC v. Faerber*, 61 Cal. 4th 813, 818 (2015) ("Although a breach of contract may constitute a single wrong, the plaintiff has separate breach of contract claims against each of the defendants alleged to be jointly and severally liable."); *Hecht v. City of New York*, 60 N.Y.2d 57, 62 (1983) ("[A] judgment for or against one tort-feasor does not operate as a merger or bar of a claim against other tort-feasors."). So, while various website operators and other ad-tech providers may have also contributed to Plaintiffs' harm by employing or partnering with Defendant, Defendant remains liable for its role as well. *McClung*, 2024 WL 189006, at *1-2 (sustaining claims against both third party and website operators). And although Defendant raises the specter of "double recovery" (MTD at 10), Plaintiffs, to date, have not recovered for the alleged conduct here. Should Plaintiffs prevail in proving both Defendant and others are liable, then courts can fashion the appropriate remedy, such as "partial satisfaction" from multiple parties. *Carr v. Cove*, 33 Cal. App. 3d 851, 854 (4th Dist. 1973).[3]

## II.    CALIFORNIA LAW APPLIES TO PLAINTIFFS' CLAIMS

Defendant contends "New York's choice of law rules mandates the application of New York substantive law to Plaintiffs' state-law claims because the alleged wrongful conduct,

---

[3] Defendant's invocation of other lawsuits (MTD at 9-10) is also largely frivolous and designed to impugn counsel and Plaintiffs. The only other lawsuit discussing either Plaintiff and Defendant is Plaintiff Weiler's lawsuit against E! Online. *See* Kletzien Decl. Ex. E. None of the other complaints mention tracking by Defendant. And as Plaintiff Weiler alleges here, she "was tracked over 45,000 times by Defendant between May 2020 and February 2025," not just on E! Online. SAC ¶¶ 182-183 (cleaned up). Moreover, although Defendant claims "Plaintiffs' counsel … currently has at least four separate wiretap lawsuits pending against the operators of the same websites identified in the Complaint" (MTD at 9), both the *Castillo* and *Addi* lawsuits have been dismissed. Kletzien Decl. Exs. C-D.

9

premised on an invasion of privacy, occurred in New York."  MTD at 11.[4]  On the contrary, a choice of law analysis mandates application of California law.

"New York has adopted an interest analysis, which requires that the law of the jurisdiction having the greatest interest in the litigation be applied."  *Krock v. Lipsay*, 97 F.3d 640, 645 (2d Cir. 1996) (cleaned up).  Where, as here, "the parties are domiciled in different states [Plaintiffs are domiciled in California, Defendant is domiciled in Delaware and New York], the locus of the tort will almost always be determinative in cases involving conduct-regulating laws."  *Id.* at 646; *see also Dorsey v. Yantambwe*, 276 A.D.2d 108, 110 (4th Dep't 2000) ("[T]he law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.").

Here, the "locus of the tort" was California.  Plaintiffs were in California while visiting websites where Defendant's trackers were installed (CAC ¶¶ 5-6), and "[t]he wiretapping of Plaintiffs … occurred in California, where … Defendant's tracker and the Partner Pixels were loaded on Plaintiffs' … browsers, and where Defendant and the Partner Pixels routed Plaintiffs' … electronic communications to Defendant's servers."  CAC ¶ 255; *see also Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *3 (W.D. Wash. Nov. 14, 2024) (denying application of law of defendant's residence and permitting a CIPA claim to proceed because plaintiff was domiciled in California "and entered into relationships with [defendant] in California"); *Popa v. Harriet Carter Gifts*, 52 F.4th 121, 131 (3d Cir. 2022) ("NaviStone intercepted Popa's communications at the point where it routed those communications to its own servers. And that was at Popa's browser, not where the signals were received at NaviStone's servers."); *Selby*, 2025

---

[4] Defendant admits there is a conflict here because "[n]either Plaintiffs' CIPA claims nor their claim for intrusion upon seclusion are recognized under New York law."  MTD at 12.

WL 2950164, at *1 ("Sovrn … installed tracking cookies onto Plaintiffs' browsers while at least some of them were in this district, and proceeded to track them as they navigated through websites in this district.") (cleaned up).

This is distinct from *Joiner v. NFL Enterprises, Inc.*, 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025), where, unlike here, "according to the Amended Complaint, NHL's allegedly wrongful conduct (i.e. placement of the Pixel) occurred in New York." *Id.*, at *11 (cleaned up).  Moreover, unlike here, the defendant there was the website operator, who configured its website (and thus, implemented the tracking technology) in New York.  *Id.*, at *12.  A visitor to NHL's website might reasonably expect New York law to apply—they are voluntarily transacting with a New York company on that company's platform. Plaintiffs here had no such reasonable expectation: Defendant operates on third-party websites (CAC ¶¶ 2, 146-147, 215), tracking users without their knowledge or consent (CAC ¶¶ 190-191, 201-202, 205, 213).

Moreover, "the injury [Plaintiffs] allegedly experienced occurred, in a large part, in" California.  *Selby*, 2025 WL 2950164, at *2. Defendant collected and disclosed Plaintiffs' profiles and other information to other third parties on the websites visited by Plaintiffs (*see*, *e.g.*, CAC ¶ 151), who were in California (CAC ¶¶ 5-6).

Even if the locus of the tort were not California, New York choice of law rules still would result in the application of California law. New York courts "do not blindly follow the lex loci rule." *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, 908 F. Supp. 2d 526, 539 (S.D.N.Y. 2012). "'Rather, [courts] must still decide whether the foreign jurisdiction has the greater interest in addressing the alleged conduct." *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 313 (S.D.N.Y. 2010) (quoting K.T. v. Dash, 37 A.D.3d 107, 111 (1st Dep't 2006)); *see also Lane v. Am. Airlines, Inc.*, 2022 WL 1062992, at *6 (E.D.N.Y. Apr. 8, 2022) (observing that New York's

*lex loci* rule is "*not chiseled in stone*, but rather gives way when it is at war with state interests so that the more general principles of interest analysis apply") (emphasis added and citation omitted). California has a greater interest than New York in protecting California residents from violations of California privacy laws. *See Golden Archer*, 908 F. Supp. 2d at 539 (applying Illinois's eavesdropping statute instead of New York's because the offending party "knowingly reached into Illinois and committed a tort against an individual and corporate entity in Illinois" and because "Illinois has the greater 'interest in regulating behavior within its borders' . . . at least with respect to the specific conduct at issue in this case"); *Castillo*, 2024 WL 4785136, at *3 ("[D]ismissing claims brought under the CIPA … would not protect California … privacy interests under [its] [California] wiretap statute."); *see also Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13 (N.D. Cal. Apr. 11, 2024) ("Because wiretapping statutes are designed to protect the privacy interests of individual members, the residences of the individuals are more important to the respective sovereign than the residence of the alleged wrongdoer.").

Further, Defendant has subjected itself to regulation in California (CAC ¶ 15). It is thus untenable for Defendant to argue it should be permitted to take advantage of California citizens, yet not be subject to California law nor allow California to protect its residents' privacy. *Cf. Briskin v. Shopify, Inc.*, 135 F.4th 739, 757 (9th Cir. 2025) ("[T]he Supreme Court has considered and rejected the argument that because a nationwide company is everywhere, it is jurisdictionally nowhere except in its principal place of business and state of incorporation.").[5] While New York generally has an interest in regulating conduct and injuries that occur within its borders, its interest is far less than that of regulating conduct within and directed towards California and causing

---

[5] Plaintiffs recognize this means dismissal of their GBL § 349 claim—which they hereby do without prejudice—and that they cannot bring an intrusion upon seclusion claim on behalf of putative class members located in New York.

injuries there—particularly when a California consumer is browsing the internet in California while being unaware that a New York company is tracking her behind the scenes.

Defendant points out that the CAC contains contradictory allegations as to where its conduct occurred. *Compare* CAC ¶ 255, *with id.* ¶ 302. But the Federal Rules of Civil Procedure allow for inconsistencies in a pleading. *See* Fed. R. Civ. P. 8(d)(2)-(3). And the Court's independent choice of law analysis should find California law applies per the above. *See Camm v. Reach Financial, LLC*, 2026 WL 861670, at *3 (S.D.N.Y. Mar. 30, 2026) ("[T]he parties have stipulated that the common-law tort claims are governed by the laws of Plaintiffs' respective home states and that the implied contract and unjust enrichment claims are governed by New York law.") Defendant also claims "the allegedly tortious conduct occurred i[n] New York" because that is where Defendant is headquartered, where its employees are located, and where its technology was "design[ed], configur[ed], and deploy[ed]." MTD at 12. But the harm is not the "design" of Defendant's trackers; it is their implementation and use. *Cf. Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 523 (C.D. Cal. 2021) (finding "possession" of a wiretapping device, absent use and implementation, did not give rise to Article III standing). The websites' code caused Defendant's trackers to be installed on Plaintiffs' browsers (CAC ¶ 143) in California, and Defendant's trackers were used in California where they collected Plaintiffs' information (*id.* ¶ 255).

Thus, California law applies because both the conduct causing Plaintiffs' injuries and Plaintiffs' injuries themselves occurred in California.

## III.   PLAINTIFFS STATE AN INTRUSION UPON SECLUSION CLAIM

### A.   Defendant Was Not A "Party" To Plaintiffs' Communications With The Partner Websites, And So Intruded Upon Them As A Third Party Eavesdropper

Defendant argues that Plaintiffs allege no "intrusion" because "Plaintiffs voluntarily visited Partner Websites, and *those Partner Websites* intended for Wunderkind to be a recipient of

Plaintiffs' information." MTD at 14 (emphasis added). This conflates two concepts: whether the *user* consents to Defendant's collection of their information, and whether the *website* consents (and the third party). The latter has no bearing on the former: "Plaintiffs may voluntarily visit the websites in question, but plaintiffs allege they did not voluntarily or knowingly visit websites that intercepted and compiled their every search via unannounced OpenX pixel." *Krzyzek*, 817 F. Supp. 3d at 868; *see also*, *e.g.*, *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 923, 932 (N.D. Cal. 2024) ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers."); *Freifeld*, 2026 WL 1759012, at \*3 ("[T]hat Defendant allegedly caused Plaintiff's computer to send outgoing communications intended for a website to also be sent to Defendant does not exculpate Defendant."); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 42 (S.D.N.Y. 2025) ("It would be illogical to allow CNN's consent to the installation of Trackers to bar claims from users like Lesh who did not give their consent.").

In other words, whether Plaintiffs consented to websites collecting their information is different than whether Plaintiffs consented to *Defendant*—a third party to any communications—doing the same (and profiling Plaintiffs and disseminating that same information elsewhere). Plaintiffs did not. CAC ¶¶ 190-191; 201-205. So Defendant attempts to shoehorn in a different argument: that it was a "party" to any communication between Plaintiffs and the Partner Websites. *See* MTD at 14. This argument has been rejected by courts evaluating allegations against Defendant's competitors and other ad-tech companies. *See Krzyzek*, 817 F. Supp. 3d at 868 ("The Court finds that OpenX is a 'third party' under CIPA § 631…"); *Freifeld*, 2026 WL 1759012, at \*3 ("[T]he Court does not consider Defendant to be a party to the communication that it caused to be duplicated and sent to itself."); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608

14

(9th Cir. 2020) ("We adopt the First and Seventh Circuits' understanding that simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception.").

Defendant's cited authorities are not persuasive. Defendant cites to *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015), but courts have not been persuaded by the Third Circuit's approach. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608; *Freifeld*, 2026 WL 1759012, at *3 ("This Court is persuaded by the approach of the Ninth Circuit and finds that the party exception rule does not apply to Defendant."). In any event, Google's presence on any particular webpage was known as "the user's web browser [] sen[t] a GET request to Google to display the relevant advertising information for the space on the page for which Google has agreed to sell display advertisements." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 140. Thus, Google's tracking was visible and known to users. The same cannot be said of Defendant. In *Camm*, 2026 WL 861670, at *10, the plaintiffs brought an intrusion claim against the "website owner[]," who was "the intended recipient of [] sensitive personal information through the loan application process." That is different than a third-party eavesdropper. Finally, the third-party vendor in *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823 (N.D. Cal. 2021), was an "extension" of the website operator, whereas Defendant, as a third-party data broker, "has the capability of using its recording for another purpose." *Krzyzek*, 817 F. Supp. 3d at 867-68 (cleaned up); *see also*, *e.g.*, CAC ¶¶ 50-52, 117-127.[6]

---

[6] *Graham* also adopted an approach to whether a software provider is a "third party" under CIPA § 631 that is outdated and has been rejected by a "growing number of district courts." *Turner v. Nuance Commc'ns, Inc.*, 735 F. Supp. 3d 1169, 1184 (N.D. Cal. 2024) (collecting cases). Instead, the prevailing view among this Court and others is that a software-as-a-service ("SaaS") provider like Defendant is a "third party" under CIPA § 631 if it "ha[s] the capability of using its recording for another purpose." *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *4 (N.D. Cal. Aug. 11, 2025) (citing *Javier v. Assurance IQ, LLC*, 649 F. Supp. 3d 891, 900 (N.D. Cal. 2023)). The "extension" approach adopted by *Graham* has been found contrary to the text of the law and

**B.    Defendant's Comprehensive Profiling Of Plaintiffs—And The Dissemination Of Those Profiles To Numerous Third Parties—Was "Highly Offensive"**

Defendant also argues that the information it collected here was not "highly offensive" because "[a]nonymized emails, IP addresses, device metadata, timestamps, action categories, and product-advertising information is … routine commercial data."  MTD at 15.  Again, the information Defendant collects is *not* anonymous.  CAC ¶¶ 57-64, 136, 185.  And "[t]he ultimate question of whether [Defendant's] tracking and collection practices could highly offend a reasonable individual is an issue that cannot be resolved at the pleading stage."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606.

Regardless, and again Defendant's argument misses the forest for the trees.  *See* Argument § I.A, *supra*.  For the same reasons as Plaintiffs have alleged an injury-in-fact, courts have roundly found the unconsented-to comprehensive profiling of users—and the dissemination of those profiles to other third parties—is "highly offensive."  *Freifeld*, 2026 WL 1759012, at *6 (finding "highly offensive intrusion" "based on the breadth of personal data allegedly collected and the fact that it was collected by an entity that Plaintiffs had no idea existed."); *Gilligan*, 2026 WL 32259, at *2 ("The collected data allegedly includes information regarding users' activity on websites and communications with websites … At the pleading stage, such allegations satisfy the requirement for a 'highly offensive' intrusion…"); *Riganian*, 791 F. Supp. 3d at 1088 ("[T]he Court cannot at this stage conclude as a matter of law that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly offensive."); *Selby*, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) (finding a "highly offensive

California Supreme Court precedent.  *Gladstone v. Amazon Web Servs., Inc.*, 739 F. Supp. 3d 846, 854 (W.D. Wash. 2024) (describing split and adopting "capability" approach).

privacy intrusion" where "Plaintiffs have alleged that Sovrn engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email address and other personal identifiers")

## IV.    PLAINTIFFS PLAUSIBLY ALLEGE A CIPA § 631(A) CLAIM

Plaintiffs allege the Partner Pixels violated the second clause of CIPA § 631(a) by reading and learning the contents of Plaintiffs' communications with the various websites "in transit." CAC ¶ 218.  Plaintiffs then allege that Defendant violated (i) the third clause of CIPA § 631(a) by "using" the intercepted communications; and (ii) the fourth clause of CIPA § 631(a) by "aiding" or "agreeing with" the Partner Pixels' wiretapping by enabling the Partner Pixels to identify the person (i.e., Plaintiff and California Subclass Members) engaging in communications with the Partner Websites."  CAC ¶¶ 219-220.  Defendant's arguments for dismissal fail.

*First*, Defendant argues that "Plaintiffs [] have not alleged actionable 'contents' of a communication within the scope of the statute."  MTD at 17.  As courts have explained, "a basic URL that directs to the homepage of a website is often found not to be content, while detailed URLs reflecting users' queries can be content."  *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169, at *4 (N.D. Cal. Apr. 4, 2025) (cleaned up).   Many of the communications here fall into the latter category.  As an example, Plaintiffs allege that, on the E! website, Defendant collected the titles of the article the user viewed.  CAC ¶¶ 89-91.  This information constitutes the "substance, purport, or meaning of th[e] communication."  *James*, 701 F. Supp. 3d at 955 (cleaned up); *see also Krzyzek*, 817 F. Supp. 3d at 867 ("Plaintiffs have adequately alleged that OpenX intercepts not only the websites visited, but also URLS including specific articles or pages the plaintiffs viewed.") (cleaned up); *Gilligan*, 2026 WL 32259, at *3 (interception of contents where

information collected included "search queries or specific pages Plaintiffs viewed").

Plaintiffs further allege that "there are hundreds or thousands of others where the same or similar information is collected and the same process occurred." CAC ¶ 147. And Plaintiffs allege that Defendant maintains an identity graph containing, among other things, "shopping preferences," (*id.* ¶ 128) and "browsing history, search history, and information on a consumer's interaction with a website" (*id.* ¶ 123 (cleaned up)), which "makes it unlikely that Plaintiffs are simply implicating record information." *James*, 701 F. Supp. 3d at 956; *see also Freifeld*, 2026 WL 1759012, at *4 ("Defendant obtained Plaintiffs' web browsing activity, purchases, and a list of content streamed, which is more than sufficient at this stage of proceedings to plausibly allege that the contents of communications were intercepted.") (cleaned up).

*Second*, Defendant argues "the Complaint lacks any allegations whatsoever about the timing of the Partner Pixels' purported interception of Plaintiffs' communications." MTD at 18. On the contrary, the CAC's screenshots show that Plaintiffs and other users are having their communications intercepted contemporaneously with visiting a webpage. *See*, *e.g.*, CAC ¶ 90. Moreover, Plaintiffs specifically allege that content information like the "[a]ction category" and "[i]nformation related to the specific product being advertised" was intercepted "in real-time and within seconds of Plaintiff[s'] visit to any Partner Website." *Id.* ¶¶ 184, 196. Thus, Plaintiffs have alleged "a real time interception." *Freifeld*, 2026 WL 1759012, at *4; *Krzyzek*, 817 F. Supp. 3d at 868 ("in transit" interception alleged where the plaintiffs alleged that "after the OpenX pixel is loaded onto a user's browser, then it intercepts the detailed, full-string URL from each page of a website a user visits") (cleaned up).

## V.    PLAINTIFFS PLAUSIBLY ALLEGE A CIPA § 632 CLAIM

Defendant argues "Plaintiffs' claim under Section 632 fails because the data alleged to be

at issue is not a 'communication' under the meaning of the statute." MTD at 19. Defendant's argument really appears to be that there was no "substantive content" to Plaintiffs' communications, which is wrong for the reasons set forth above. *See* Argument § IV, *supra*. Defendant does not and cannot credibly argue that Plaintiffs' interactions with websites here are not "communications." *See*, *e.g.*, Cal. Pen. Code § 629.51(a)(2) ("'Electronic communication' means any transfer of signs, signals, writings, images, sounds, data, or intelligence of any nature in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system…"); *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *7 (N.D. Cal. Oct. 9, 2025) ("When a user enters Mashable's website, the browser necessarily transmits an HTTP request to Mashable's server … This is a paradigmatic 'electronic communication.'"); *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *1 (N.D. Cal. Oct. 23, 2019) ("Revitch requested information from Moosejaw by clicking on items of interest; Moosejaw responded by supplying that information. This series of requests and responses – whether online or over the phone – is communication.").

Nor is Defendant correct that "Plaintiffs fail to allege sufficient facts to show that such 'communications' are 'confidential.'" MTD at 20. As an initial matter, Plaintiffs allege that Defendant "collected a massive swath of information on Plaintiffs and California Subclass Members … to create a detailed, non-anonymous profile of Plaintiffs based on their activity across the internet, including their shopping habits, *financial status and information, health information, political leanings and interests, and the media they consume*." CAC ¶ 263 (emphasis added). Much of that information is widely considered confidential. *See*, *e.g.*, *Taylor v. ConverseNow Techs., Inc.*, 2025 WL 2308483, at *8 (N.D. Cal. Aug. 11, 2025) ("Alleging the sharing of personally identifiable information and personal financial information is sufficient to allege a confidential communication took place, at least at the pleading stage."); *Yockey v. Salesforce, Inc.*,

19

688 F. Supp. 3d 962, 973 (N.D. Cal. 2023) (sustaining CIPA § 632 claim based on interception of information from chat portal on insurance provider's website).

Beyond this, "Plaintiffs' allegations support a plausible inference they had a reasonable expectation of privacy in the breadth of information [Defendant] allegedly collected." *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *7 (N.D. Cal. Apr. 21, 2026) (sustaining CIPA § 632 claim). For instance, in *Jones v. Skullcandy, Inc.*, 2026 WL 699819 (S.D. Cal. Mar. 12, 2026), the plaintiff alleged third parties "collect[ed] information such as detailed browsing histories and product preferences, … personally identifiable information including names, email addresses, and Facebook/Google account identifiers, real-time behavioral data showing consumer interests and purchasing patterns, and demographic and psychographic profiles that enable targeted marketing." *Id.* at *18 (cleaned up). The court sustained the plaintiff's CIPA § 632 claim because the plaintiffs had "a reasonable expectation that the immense amount of personally identifiable and browsing data allegedly collected by the Tracking Technologies would not be shared with third parties." *Id.*

So too here. Plaintiffs allege Defendant records personally identifiable information, including but not limited to e-mail addresses, mobile advertising identifiers, and IP addresses, which Defendant uses to "matches the … users of its' clients websites … with its data set of "9 billion consumer devices and 1 billion consumer profiles." CAC ¶ 124; *see also*, *e.g.*, *id.* ¶¶ 114-120. As Defendant notes, "this repository of information is more than most identity solutions have collected in their existence," which Defendant "provides … to the Partner Pixels for the serving of advertisements, and advertisers can better target users based on this enriched data." *See id.* ¶¶ 50-52, 113, 123, 125, 128-131, 140. Thus, as in *Jones*, the communications here were "confidential" because Defendant violated Plaintiff's reasonable expectation that "the immense amount of personally identifiable and browsing data allegedly collected by [Defendant] would not be shared

20

with third parties." *Jones*, 2026 WL 699819, at *18.

## VI.    PLAINTIFFS PLAUSIBLY ALLEGE A CIPA § 638.51 CLAIM

Defendant argues that "Plaintiffs cannot maintain a cause of action under Section 638.51 because that section of CIPA, by its plain terms, applies only to the use of a trap and trace or pen register device *on a telephone*."   MTD at 21 (emphasis in original).   That argument has been rejected by *every single federal court*—and the majority of courts at large—to consider it.   *See*, *e.g.*, *Fregosa v. Mashable, Inc.*, 2026 WL 183857, at *2 (N.D. Cal. Jan. 23, 2026) ("*[E]very* federal court to tackle the CIPA applicability question has rejected Mashable's position.") (emphasis in original); *Lesh v. Cable News Network, Inc.*, 767 F. Supp. 3d 33, 41 (S.D.N.Y. 2025) ("[T]he plain text of Section 638.50 clearly does not limit the application of pen registers to telephones."); *Torres v. Seatgeek, Inc.*, 2026 WL 1495202, at *8 (N.D. Cal. May 28, 2026) ("Many defendants have taken SeatGeek's position that CIPA applies only to tracking technology for phones and not the internet. None have succeeded in this district."); *Ortiz v. Foris Dax, Inc.*, 2026 WL 1430720, at *7 (N.D. Cal. May 21, 2026) ("While decisions are split, a majority have adopted the broader construction that Plaintiffs urge, mostly relying on the plain text of the statute."); *Harris*, 2026 WL 1138358, at *3 ("The overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA.").

Indeed, Defendant's *exact tracking technologies* have been deemed "pen registers" by courts considering CIPA § 638.51 claims.  *See*, *e.g.*, *Fregosa v. Mashable, Inc.*, 2025 WL 2886399, at *1, *6 (N.D. Cal. Oct. 9, 2025); *Anderson*, 2026 WL 925519, at *3, *8-9.

Defendant does not bring any new arguments to the table.   Instead, its Motion regurgitates arguments that have been rejected *ad nauseum* at this point.   *See*, *e.g.*, *Lesh*, 767 F. Supp. 3d at 41

21

("The Court will not read the term 'telephone' into Section 638.50 just because the word is used in another section of the statute [Section 638.52, which Defendant cites] that bears little relevance here."); *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 815 (2024) ("[T]he text of a law controls over purported legislative intentions unmoored from any statutory text"); *Ortiz*, 2026 WL 1430720, at *7 ("By directly borrowing the federal pen register definition, the California legislature imported the expansion of its scope which occurred in 2001, years before CIPA was enacted.  The legislative history of the pen register provision thus supports a broad, rather than narrow, construction of the term pen register."); *Lewis v. Magnite, Inc.*, 2025 WL 3687456, at *13 (C.D. Cal. Dec. 4, 2025) (finding *Scharon v. Paramount Global*, 2025 WL 2996812 (Los Angeles Super. Ct. Oct. 3, 2025), which Defendant cites, unpersuasive, because it "glosses over the requisite textual analysis in favor of weighing extraneous factors and, in some cases, unilaterally adds modifiers to the statute").

Perhaps most persuasively, as the *Ortiz* court recognized, the CIPA's definition of a "pen register" is modeled after the federal pen register act, which has been recognized for decades to apply to the Internet.  *In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 47 (D. Mass. 2005) ("There can be no doubt that the expanded definition of a pen register, especially the use of the term 'device or *process*,' encompasses e-mail communications and communications over the internet.") (emphasis in original).  So where as here, CIPA's pen register defined is "patterned after (the) federal statute[]," "it will ordinarily be presumed that the Legislature intended that the language as used in the later enactment would be given a like interpretation." *Belridge Farms v. Agricultural Labor Relations Bd.*, 21 Cal. 3d 551, 557 (1978).

Plaintiffs do bring to the Court's attention a pending appellate petition in *Variety Media,*

22

*LLC v. Superior Court*, Case No. B350578 (2d Dist. Ct. App.).[7]  That petition will provide a California appellate court with the opportunity to determine whether CIPA's pen register provision applies to internet-tracking technologies like Defendant's or is limited to telephonic devices. Unless that petition comes out in Defendant's favor, however, Defendant's "suggestion that the court chart a different path in this case" based on these same tired arguments and against the weight of authority cited above "is not persuasive."  *Maketa v. Valnet Inc.*, 2026 WL 323126, at *1 (N.D. Cal. Feb. 6, 2026).

## VII.    PLAINTIFFS PLAUSIBLY ALLEGE AN ECPA CLAIM

Defendant argues that Plaintiffs "fail to plausibly allege that the 'contents' of their communications were intercepted." MTD at 27 n.11.  This argument fails for the reasons set forth above.  *See* Argument § IV, *supra*.

Defendant is also incorrect that "the crime-tort exception is inapplicable to save Plaintiffs' ECPA claim."  MTD at 27.  Courts have routinely found the "crime-tort" exception applies where plaintiffs "alleged that [technology companies] intercepted their communications for the purpose of associating their data with preexisting user profiles," that this "association of their data with preexisting user profiles violated state law" (*Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021)), and that the technology companies "benefited from this interception by using the information to sell ads to other third-party advertisers." *Marden v. LMND Med. Grp., Inc.*, 2024 WL 4448684, at *3 (N.D. Cal. July 3, 2024); *Semien*, 2026 WL 216333 at *10 ("Courts have held that the association of Plaintiffs data with preexisting user profiles is a further use of Plaintiffs' data that satisfies the exception.") (cleaned up); *Riganian*, 791 F. Supp. at 1091 ("[I]f Plaintiffs ultimately prove that LiveRamp unlawfully intercepted, packaged, and sold personal information

---

[7] Bursor & Fisher is counsel for the plaintiff/real party in interest in *Variety*.

without consent at scale, that conduct will not be excused on the grounds that LiveRamp acted in pursuit of profit.").[8]  Plaintiffs have alleged as much here.  *See* Argument § I.A, *supra*.

The fact Defendant was motivated by profit is of no moment: it is unpersuasive that "commercially exploiting unlawfully obtained information is 'licit' merely because it is profitable." *Riganian*, 791 F. Supp. at 1090; *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *6 (N.D. Ill. Feb. 21, 2025) ("[T]he existence of a financial motivation is not a get-out-of-liability-free card."); *R.S. v. Prime Healthcare Servs., Inc.*, 2025 WL 103488, at *7 (C.D. Cal. Jan. 13, 2025) ("Under Prime Healthcare's reading, the ECPA would not prohibit a person from intercepting a communication with the intent to use that communication to blackmail so long as the ultimate reason for the blackmail was to make money … This cannot be the case.").

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety.[9]  If the Court grants the Motion in any respect, Plaintiffs respectfully request leave to amend to cure any such deficiencies.

---

[8] Defendant cites to this Court's decision in *Camm*.  MTD at 26.  But this Court was not faced with allegations regarding widespread profiling like those here, which courts have found satisfy the crime-tort exception.  Defendant is.  CAC ¶ 15.

[9] Plaintiffs voluntarily dismiss their GBL § 349 claim without prejudice.

Dated: June 26, 2026                                Respectfully submitted,

By: */s/ Yitzchak Kopel*                            By: */s/ Raphael Janove*
      Yitzchak Kopel                                   Raphael Janove

**BURSOR & FISHER, P.A.**                           **JANOVE PLLC**
Yitzchak Kopel                                      Raphael Janove
Alec M. Leslie                                      115 Broadway, 5th Fl.
Max S. Roberts                                      New York, NY 10006
Victoria X. Zhou                                    Telephone: (646) 347-3940
1330 Ave. of the Americas, 32nd Floor               E-mail: raphael@janove.law
New York, NY 10019
Telephone: (646) 837-7150                           **JANOVE PLLC**
Facsimile: (212) 989-9163                           Liana Vitale
E-mail: ykopel@bursor.com                           979 Osos St., Ste. A5
      aleslie@bursor.com                          San Luis Obispo, CA 93401
      mroberts@bursor.com                         E-mail: liana@janove.law
      vzhou@bursor.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta
50 Main Street, Suite 475
White Plains, NY 10606
Telephone: (914) 874-0710
Facsimile: (914) 206-3656
E-mail: pfraietta@bursor.com

*Interim Class Counsel*

25

## WORD COUNT CERTIFICATION

I hereby certify that the foregoing Memorandum of Law contains 7,764 words, which meets the word-count limits of L.R. 7.1(c).

Dated: June 26, 2026                              By: */s/ Yitzchak Kopel*
                                                        Yitzchak Kopel