UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WUNDERKIND PRIVACY LITIGATION | Case No. 1:25-cv-05854-KPF |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

HOLLAND & KNIGHT LLP
787 Seventh Avenue
New York, New York 10019
(212) 513-3200

*Attorneys for Defendant*
*Wunderkind Corporation*

## INTRODUCTION

Plaintiffs' Opposition makes obvious their true gambit in filing this action: to fling a hodgepodge of "facts" about the adtech industry at a mosaic of different legal theories under laws of multiple states and hope something sticks. That strategy does not pass muster under Rule 12(b)(1) or 12(b)(6), and Plaintiffs' attempt to walk away from portions of their Consolidated Complaint does not cure the other deficiencies in their pleading.

Three fatal defects, each independently dispositive, compel dismissal with prejudice: (1) Plaintiffs fail to allege any "highly offensive" intrusion, as the data at issue consists solely of routine commercial information which courts in this District have consistently held insufficient to establish an injury-in-fact; (2) Plaintiffs cannot establish traceability where Plaintiff Weiler is simultaneously suing five other companies for identical alleged harms; and (3) New York law—which Plaintiffs themselves allege governs—defeats their core theories, as they concede. Rather than confront these deficiencies, Plaintiffs resort to sweeping rhetoric and citations to inapposite, out-of-circuit decisions involving different companies, different technologies, and far more sensitive data.

Plaintiffs' effort to disavow *their own pleading* is telling. First, they disavow the only tangible "injury" alleged in the Complaint—receiving targeted advertisements. *Compare* Compl. ¶¶ 189, 200 ("Defendant . . . targeted Plaintiff with advertisements and served advertisements on Plaintiff based on the information collected . . .") *with* Opp. at 7 n.2 (stating their harm "is not dependent on whether they actually received targeted advertisements"). Stripped of that theory, Plaintiffs now assert an even more abstract "loss of control" over non-sensitive commercial data injury, which is precisely the type of intangible harm rejected by this Court and others. *See Camm*

*v. Reach Fin., LLC*, No. 25-cv-1921 (KPF), 2026 WL 861670 (S.D.N.Y. Mar. 30, 2026); *Xu v. Reuters News & Media Inc.*, 2025 WL 488501, at *3 (S.D.N.Y. Feb. 13, 2025).

Second, Plaintiffs disavow their Complaint's invocation of New York law and now plead for the application of California law because they concede that they "cannot bring an intrusion upon seclusion claim on behalf of putative class members located in New York." Opp. at 12 n.5. Plaintiffs also wholly abandon their N.Y.G.B.L. § 349 claim.

Third, Plaintiffs effectively concede the absence of traceability by failing to explain how Plaintiff Weiler, for example, can trace the same privacy injury to Wunderkind while simultaneously maintaining separate lawsuits against E! Entertainment (one of the underlying websites at issue in this very case), Gap, Ikea, Delta Dental, and Service Quick for the same overlapping harms. This logical impossibility is fatal to standing, which remains Plaintiffs' burden to establish.

The Complaint fails at every step of the Article III inquiry and fails to satisfy Fed. R. Civ. P. Rule 8. Plaintiffs cannot reform their pleadings by motion—particularly where, as here, the Court has already provided an opportunity to amend. The Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I. This Court Has Already Determined that Disclosure of Routine Commercial Data Is Not a Sufficient Harm, and Plaintiffs Identify No Other Article III Injury.

There is a legally-dispositive gap between Plaintiffs' generalized claim that Wunderkind creates "comprehensive profiles" and the actual allegations about what was collected from them: hashed email address, IP address, device information, date and time of visit, action category, and information related to the specific product being advertised. *See* Compl. ¶¶ 184, 196. And while the Complaint attempts to claim injury in the form of receiving targeted advertisements, Plaintiffs

have now abandoned that theory in favor of an abstract “loss of control” over *non-sensitive* data theory (*see* Opp. at 7 n.2)—which this Court rejected in *Camm*. *Camm* is dispositive: “data collection and disclosure to third parties that is ‘routine commercial behavior’ is not a ‘highly offensive’ intrusion of privacy.” 2026 WL 861670, at *10. Even collection of “social security numbers and geolocation”—not alleged here—is not “highly offensive” in a commercial context. *Id*.

Plaintiffs try to distinguish *Camm* by arguing the Court in *Camm* “did not evaluate allegations of profiling by a third party eavesdropper,” (Opp. at 6) but this is a distinction without a difference, and Plaintiffs do not explain how the *identity* of the data collector is relevant to whether Plaintiffs have suffered an injury based on the *type* of data collected. Likewise, Plaintiffs’ attempt to distinguish *Xu v. Reuters News & Media Inc.,* 2025 WL 488501 (S.D.N.Y. Feb. 13, 2025) and *Gabrielli v. Insider*, 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025) is misguided because the mere allegation that Wunderkind compiled data profiles does not make such data collection “highly offensive” where the components of those profiles are non-sensitive commercial data. Plaintiffs cite no binding authority for the proposition that the process of compiling is itself actionable regardless of the data elements involved.[1]

The Opposition identifies no sensitive data actually collected from Plaintiffs Weiler or Balogun, relying instead on allegations of what Wunderkind hypothetically “can do” and what *other* companies collected in *other* cases. But standing requires a particularized injury to *these*

[1] Plaintiffs argue that this Court should find they have established standing because the *California state court* found plaintiffs in *Xu* had standing on remand. *See* Opp. at 5-6 (citing *Xu v. Reuters News & Media, Inc.*, 2025 WL 3035016, at *3 (Santa Clara Super. Ct. Oct. 24, 2025)). The California Superior Court’s decision in *Xu* is irrelevant because prerequisites for standing in California do not apply here.

*Plaintiffs* based on what data *Wunderkind actually* collects; general assertions about a company's business model or capabilities are insufficient. *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 303 (N.D.N.Y. 2019) ("named plaintiffs who represent a class must allege and show that they personally have been injured") (citation omitted). Allegations about what *other* companies do certainly does not suffice. *See In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 764 (S.D.N.Y. 2012) (allegations about industry-wide practices insufficient to state a claim in absence of any allegations of defendant's own conduct).

Plaintiffs' reliance on out-of-circuit decisions involving other adtech companies is unpersuasive. *See* Opp. at 1. Plaintiffs may not piggyback on those cases' allegations to bolster their deficient pleading here. Those cases involve allegations of far more sensitive data that are absent here. *See, e.g., Freifeld v. Epsilon Data Management, LLC*, 2026 WL 1759012, at *7 (N.D. Ill. June 15, 2026) (disclosure of number of children, income level and banking information, health conditions, and history of purchases and streaming of content); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1082 (N.D. Cal. 2025) (defendant sold "digital identifiers associated with people with cancer, union members, Muslims, Jewish people, African Americans, poor people, payday loan prospects, online gamblers, unemployed individuals who were 'seen at clinics/hospitals' and users of the LGBT dating app Grindr."); *Krzyzek v. OpenX Techs., Inc.*, 817 F. Supp. 3d 857, 863 (N.D. Cal. 2026) (disclosure of "sensitive browsing activity" including applications for health insurance); *Semien v. PubMatic Inc.,* 2026 WL 216333 at *1 (N.D. Cal. Jan. 27, 2026) (disclosure of "age, credit risk, yearly household income, affluence level, field of study, and confidence in keeping a budget"). *Cf. Popa v. Microsoft Corp.*, 153 F.4th 784, 791 (9th Cir. 2025) (to establish a concrete injury, a plaintiff must show not only that personal information was disclosed, but that the information was in some way "embarrassing, invasive, or otherwise

private.") Plaintiffs' legal support does not substantiate any claims, or evidence any injury, with respect to Wunderkind.

## II. Plaintiffs Fail to Meaningfully Confront Wunderkind's Traceability Arguments.

Plaintiffs concede their traceability deficiency by acknowledging that "various website operators and other ad-tech providers may have also contributed to Plaintiffs' harm." Opp. at 9. Concurrent causation, however, still requires plausible allegations of Wunderkind's specific contribution to each Plaintiff's harm.[2] The Complaint lacks any such allegations.

The Opposition fails to reconcile the existence of Plaintiff Weiler's multiple lawsuits against a plethora of website operators with Plaintiffs' burden to establish traceability to Wunderkind. Weiler's allegations here are nearly identical to the allegations against E! Entertainment, Gap, Ikea, Delta Dental, and Service Quick, with no effort to explain the causal contributions of any actor. *See* Kletzien Decl. Exhibits E, F, G, H and I**.** The Complaint's logical impossibility remains: Plaintiffs cannot simultaneously assert that multiple different defendants each independently caused the same "loss of control" and "invasion of privacy." This is the antithesis of traceability.

Moreover, Plaintiffs' traceability allegations are wholly conclusory. Plaintiffs fail to identify which advertisements they were shown as a result of Wunderkind's specific conduct, or how Wunderkind's data collection—as opposed to the conduct of Partner Websites or other ad-tech companies—led to any concrete downstream injury. The Opposition's insistence that

---

[2] *Estate of Parker v. Mississippi Dep't of Public Safety*, 140 F.4th 226 (5th Cir. 2025) and *New Jersey Bankers Association v. Attorney General New Jersey*, 49 F.4th 849 (3d Cir. 2022), cited by Plaintiffs for concurrent causation, involved identifiable causal contributions by each defendant—not the undifferentiated web of actors present here. The Complaint fails to distinguish Wunderkind's contribution from that of any other participant in the global advertising ecosystem, rendering traceability impossible. *See Chevron Corp. v. Donziger*, 833 F.3d 74, 120 (2d Cir. 2016).

Wunderkind "played a role" (Opp. at 7) is precisely the kind of conclusory assertion that does not satisfy Article III. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

## III. Plaintiffs Cannot Amend Their Applicable Law Allegations by Motion.

Despite invoking New York law in the Complaint and alleging Wunderkind is a New York entity with its principal place of business in New York, Plaintiffs now demand the application of California law.

Plaintiffs concede that under New York's interest analysis, privacy torts are "conduct-regulating" laws governed by "the law of the jurisdiction where the tort occurred." *Krock v. Lipsay*, 97 F.3d 640, 646 (2d Cir. 1996); *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).[3] Plaintiffs allege that "Wunderkind's conduct occurred in New York," and Counts I and VI are pled "pursuant to New York law." Compl. ¶¶ 231, 302. Plaintiffs cannot use their Opposition to amend their pleading. *See Bellocchio v. Garland*, 614 F. Supp. 3d 11, 19 n.4 (S.D.N.Y. 2022) ("a party "cannot amend its pleading through its opposition brief[.]").

First, Plaintiffs' reliance on Fed. R. Civ. P. 8(d)(2)-(3) (Opp. at 13) is misplaced because while Rule 8(d) permits alternative legal theories, it does not permit contradictory factual allegations. *Ulloa v. Takata Corp., TK Holdings Inc.*, 2017 WL 1194691, at *3 (S.D.N.Y. Mar. 30, 2017). Alleging tortious conduct occurred in New York in one document and in California in another is a factual contradiction warranting dismissal under Rule 12. *See, e.g., Nguyen v. Abbott Labs., Inc.*, 2026 WL 579206, at *6-7 (N.D. Ill. Mar. 2, 2026) (dismissing third-party website

[3] Plaintiffs incorrectly argue that the tort occurred in California, where Plaintiffs were physically located when they allegedly visited the relevant websites. As the Second Circuit has explained, where "both the wrong and the injury [do not] take place in the same jurisdiction…*it is the place of the allegedly wrongful conduct* that generally has superior interests in protecting the 'reasonable expectations of the parties'" and should therefore govern. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50 (2d Cir. 2013) (emphasis added).

tracking lawsuit where Plaintiffs' allegations were "contradicted by [other] facts set forth in the complaint").

Second, *Joiner v. NHL Enterprises, Inc.*, 2025 WL 2846431 (S.D.N.Y. Aug. 29, 2025) disposes of Plaintiffs' argument. The *Joiner* court applied New York law because the "allegedly wrongful conduct" (placement and implementation of a tracking pixel) "emanated from defendants' New York operations." *Id.* at *11. That NHL was the "website operator" (*see* Opp. at 11) does not change where the alleged tortious conduct occurred. Wunderkind's design, configuration, and deployment of its tracking technology emanated from its New York headquarters (Compl. ¶¶ 7, 302), regardless of whether its technology operates on its own website or third-party websites. Indeed, Plaintiffs acknowledge that "according to the Amended Complaint, NHL's allegedly wrongful conduct (i.e. placement of the Pixel) occurred in New York" (Opp. at 11). Plaintiffs make the *same allegation* about Wunderkind. *See* Compl. ¶ 302 ("Wunderkind's conduct occurred in New York.")

Notably, Plaintiffs' voluntary dismissal of their GBL § 349 claim and concession that they "cannot bring an intrusion upon seclusion claim on behalf of putative class members located in New York" (Opp. at 12 n.5) implicitly acknowledges that New York law does not support their core theories. If New York law applies—as the Complaint alleges—the Court should dismiss the intrusion upon seclusion claim because New York has consistently refused to recognize a common-law right of privacy, and dismiss all three CIPA claims because New York does not recognize private civil suits for wiretapping.[4] *See* Moving Brief ("Motion") at 12-13.

[4] Plaintiffs in their Opposition voluntarily dismiss their GBL § 349 claim "without prejudice." Opp. at 12 n.5. The Court should dismiss this claim with prejudice because the deficiency is not curable. The non-sensitive data at issue will never constitute a cognizable GBL injury. *See Cohen v. Casper Sleep Inc.*, 2018 WL 3392877, at *5 (S.D.N.Y. July 12, 2018). General assertions of "invasion of privacy" also do not establish a GBL injury. *See Poppel v. Estate of Archibald*, 2020 WL 2749719, at *4 (S.D.N.Y. May 27, 2020). Because Plaintiffs have already been granted leave to amend and the deficiency is substantive rather than technical, dismissal with prejudice is appropriate.

## IV. Plaintiffs' Opposition Cannot Overcome the Complaint's Deficiencies under Rule 12(b)(6).

### A. Plaintiffs' Claims Hinge on Impermissible Conclusory Allegations.

Plaintiffs' claims rest on conclusory allegations devoid of facts and therefore fail to state a plausible claim for relief under Rule 12(b)(6).

Even if California law did apply, Plaintiffs' inability in the Complaint to identify any disclosure of sensitive data is fatal. Disclosure of routine commercial data is not a "highly offensive" intrusion upon seclusion,[5] and does not convey the "content" of any communications under CIPA § 631(a). Plaintiffs cite *Smith v. Rack Room Shoes, Inc.*, 2025 WL 1085169 (N.D. Cal. Apr. 4, 2025) for the proposition that "detailed URLs reflecting users' queries can be content." Opp. at 17. But Plaintiffs do not allege which URLs were intercepted or that those URLs conveyed any substantive content. The only specific example is collection of "the titles of the article the user viewed" on E! (Compl. ¶¶ 89–91), which is closer to record information (what webpage was accessed) than substantive content.

Contrary to the Opposition, the Complaint's allegations about the volume of information collected and the existence of an identity graph containing nondescript "shopping preferences…browsing history, search history, and information on a consumer's interaction with a website" (Opp. at 18) do not show that substantive content of any communications were shared, as they do not explain any "intended message conveyed by the communication." *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 944 (N.D. Cal. 2023).

Routine commercial data also does not constitute "confidential" communications under CIPA § 632. Plaintiffs fail to plead "unique, definite circumstances rebutting California's

---

[5] *See Camm*, 2026 WL 861670, at *10.

presumption against online confidentiality," as they do not identify a single URL, webpage, article, or piece of content they accessed that could plausibly be characterized as sensitive or confidential. *Rodriguez v. Google LLC*, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021). Nor does routine commercial data "evince an intent to commit a crime or tort" under ECPA. *Camm*, 2026 WL 861670, at *5 (disclosure of information for marketing purposes failed to establish ECPA's crime-tort exception). Plaintiffs' cited case law is inapposite, as each case involves allegations of sensitive data disclosure not present here. *See* Opp. at 23-24. Plaintiffs here fail to plead both the existence of a tort and the requisite intent to commit such tort.

Plaintiffs' focus in the Opposition on email addresses not being "anonymized" is irrelevant; even if unhashed, this data is still not improper in a commercial context. Importantly, the Complaint's prosaic allegations about disclosure of financial and health information are wholly conclusory and unsupported by any specific factual allegations as to *these Plaintiffs*. The cases relied upon by Plaintiffs to argue that they had a reasonable expectation of privacy in the information collected are distinguishable, as both involved specific allegations of more sensitive data than here.[6] And as discussed above, the Opposition's citations to out-of-circuit adtech cases are inapposite because those cases involved allegations of far more sensitive information that are entirely absent from this Complaint. *See supra*, Sec. I.

### B. Plaintiffs Provide No Compelling Reason For This Court to Stretch the Statutory Language of CIPA § 638.51 to Internet Tools.

CIPA Section 638.51's legislative history is unambiguous: the statute addresses telephone-based surveillance, not internet tracking. Plaintiffs do not address the AB 929 and AB 1924 bill

[6] *See Jones v. Skullcandy, Inc.*, 2026 WL 699819, at *1 (S.D. Cal. Mar. 12, 2026) (plaintiffs alleged disclosure of specific transactional data including purchase information and shopping cart contents); *Dellasala v. Samba TV, Inc.*, 2026 WL 1138358, at *3 (N.D. Cal. Apr. 21, 2026) (plaintiffs alleged that technology embedded in smart televisions captured the substance of the media users watched to glean preferences like political leaning).

analyses set forth in Wunderkind's Motion, which repeatedly reference "telephone lines," "outgoing numbers from a particular telephone line," and "incoming phone numbers." *See* Mot. at 23-24.

Plaintiffs claim that "every federal court" has rejected Wunderkind's position (Opp. at 21) but ignore the fact that multiple California Superior Courts have sustained demurrers on this precise issue. For example, in *Blaker v. NetScout Systems, Inc.*, 2026 WL 1709143, at *3 (Cal. Super. May 27, 2026), the court sustained defendant's demurrer without leave to amend, explaining "the full statutory scheme [of Section 638.51] appears to demonstrate that the Legislature only intended these provisions to apply to telephonic communications and not to internet websites". Similarly, in *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) the court rejected plaintiffs' cause of action under Section 638.51, finding the statute "applies only to telephone-tracking technology, not IP address-collecting software used by a website to improve its user functionality and the effectiveness of its marketing."[7] This Court is not bound by the federal district court decisions Plaintiffs cite, and should follow the plain text and legislative history of the statute, along with the reasoned decisions of the California judiciary. Moreover, as Plaintiffs acknowledge, the scope of Section 638.51 is currently being considered by the California Court of Appeal (2d Dist., Div. 1) in *Variety Media, LLC v. Superior Court*, No. B350578 (Cal. Super.), where the parties have briefed the issue of whether website pixel technology fits within definition of a "pen register". This Court should decline to extend Section 638.51 beyond its text while an authoritative California appellate decision is pending.

## **CONCLUSION**

[7] *See also Cammorata v. Sonifi Solutions, Inc.*, 2026 WL 500856, at *2 (Cal. Super. Feb. 18, 2026) (finding Section 631.51 does not apply to website tracking tools); *Heiting v. HP Inc.*, 2025 WL 2993673, at *2-4 (Cal. Super. Aug. 01, 2025) (same); *Casillas v. Transitions Optical, Inc*, 2024 WL 4873370, at * 4 (Cal. Super. Sept. 9, 2024) (same); *Palacios v. Fandom, Inc.*, 2024 WL 5494527, at *3 (Cal. Super. Sep. 24, 2024) (same).

For the foregoing reasons and those in Wunderkind's Motion, the Court should dismiss the Consolidated Amended Class Action Complaint in its entirety, with prejudice.

Dated: July 17, 2026

Respectfully submitted,

*/s/ Mark S. Melodia*

Mark S. Melodia (5059381)
Qian (Sheila) Shen (5451356)
Sophie L. Kletzien (5860309)
**HOLLAND & KNIGHT LLP**
787 Seventh Avenue, Floor 31
New York, NY 10019
(212) 513-3200
mark.melodia@hklaw.com
qian.shen@hklaw.com
sophie.kletzien@hklaw.com

Ashley L. Shively (*admitted pro hac vice*)
**HOLLAND & KNIGHT LLP**
560 Mission Street, Suite 1900
San Francisco, CA 94105
(415) 743-6900
ashley.shively@hklaw.com

*Attorneys for Defendant Wunderkind Corporation*

**WORD COUNT CERTIFICATION**

Pursuant to Local Civil Rule 7.1(c), the undersigned counsel hereby certifies that this Reply Memorandum of Law contains 3,228 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certification, as measured by the word-processing system used to prepare this document.

DATED: July 17, 2026

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

*/s/ Mark S. Melodia*
Mark S. Melodia (5059381)
Qian (Sheila) Shen (5451356)
Sophie L. Kletzien (5860309)